Fred **MESHELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 1339–85.

Court of Criminal Appeals of Texas,
En Banc.

July 1, 1987.

Frank B. Brooks, William B. Jeter, Houston, for appellant.

Robert W. Gage, Co. Atty., Fairfield, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted, after a plea of guilty, of the offense of theft of property valued at more than $200 but less than $10,000. Punishment was assessed at five years confinement in the Texas Department of Corrections, probated for five years.

The Tenth Court of Appeals, in an unpublished opinion, affirmed appellant's conviction and held the "Speedy Trial Act," Acts 1977, 65th Leg., p. 1970, ch. 787, unconstitutional on the basis of a defective title or caption under Article III, § 35, of the Texas Constitution.[1] *Meshell v. State,* No. 10-84-168-CR (Tex.App.—Waco 10/17/85). We granted appellant's petition for discretionary review to determine 1) whether the Speedy Trial Act (Act) is unconstitutional because it violates Article III, § 35, or Article II, § 1, of the Texas Constitution[2] and 2) whether the indictment against appellant should have been dismissed under the Act or under the speedy trial clauses of the federal or state constitutions. Art. 32A.02, § 1(1), V.A.C. C.P.; U.S. Const. amend. VI; Tex.Const. art. I, § 10.[3] We will affirm.

---

1. Tex. Const. art. III, § 35 (Vernon's 1984), in effect at the time of appellant's direct appeal, provided:
 No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed.
 Tex.Const., Art. III, § 35 (Vernon's 1984).

2. Article II, § 1, supra, provides:
 The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

3. We granted review because the Tenth Court of Appeals declared the Act unconstitutional. Tex.

Cr.R.App.Pro. 302(c)(4). In addition, we note the existence of conflicting decisions between the Tenth Court of Appeals and the First and Second Courts of Appeals. Tex.Cr.R.App.Pro. 302(c)(1). Cf. *Meshell,* supra (caption to Act defective), *Stewart v. State,* 699 S.W.2d 695 (Tex.App.—Waco 1985, pet. granted), and *Wallace v. State,* No. 10-85-164-CR (Tex.App.—Waco 1985, pet. pending) (unpublished), with *Wright v. State,* 696 S.W.2d 288, 296 (Tex.App.—Forth Worth 1985) (caption to Act sufficient) and *Morgan v. State,* 696 S.W.2d 465 (Tex.App.—Houston [1st] 1985) (caption to Act sufficient). However, in granting appellant's ground of review, we have not restricted our review only to the Court of Appeals' application of Article III, § 35, supra.

Appellant's ground of review was phrased broadly, requesting review by this Court of "[w]hether the Texas Speedy Trial Act ... is unconstitutional." (Appellant's Pet. for Review, p. 2). This Court has granted review of the entire decision of the Court of Appeals, which included a ruling that the Act did not violate Article II, § 1, of the Texas Constitution Art. Tex.Cr.R.App.Pro. 303(a).

## I. Procedural History

In early May of 1983, appellant was questioned by a Walker County deputy sheriff in the course of an investigation of the theft of a truckload of pipe. On or about May 20, 1983, a warrant for appellant's arrest was issued in Walker County and teletyped to Harris County, where appellant was known to reside. Appellant was arrested by a Harris County deputy sheriff on May 25, 1983 and transported to Walker County the next day. On June 21, 1983, a motion for *nolle prosequi* was granted because the Walker County Criminal District Attorney had discovered that the offense had been committed in Freestone County. Appellant was no-billed by a Walker County grand jury. Appellant returned home to Harris County.

On June 21, 1983, the Walker County Sheriff's Office forwarded the results of their investigation to the Freestone County Attorney's Office. On June 28, 1983, a warrant for appellant's arrest, issued by a Freestone County Justice of the Peace, was received by the Freestone County Sheriff's Office. On June 29, 1983, the warrant, which contained an incorrect address of appellant's residence, was teletyped to the Harris County Sheriff's Office. On July 21, 1983, a Freestone County grand jury indicted appellant for felony theft. Appellant was not aware of either the warrant or the indictment.

On August 9, 1983, after the felony theft charge had been filed against appellant, data regarding appellant and the warrant for his arrest were entered by the Freestone County Sheriff's Office onto the Texas Crime Information Center and the National Crime Information Center computer networks. On September 22, 1983, the Freestone County Sheriff's Office sent a second teletype to the Harris County Sheriff's Office, correcting appellant's address and requesting help in enforcing the warrant. On August 6, 1984, appellant was arrested by an officer with the LaPorte Police Department.

On September 4, 1984, appellant filed a motion to dismiss the indictment pending against him. In the motion, appellant cited the State's failure to be ready for trial within 120 days under the Speedy Trial Act as the basis for dismissal. On September 7, 1984, a hearing on appellant's motion was held, revealing the above facts. By way of an explanation for the delay in arresting appellant, the State offered into evidence a stipulation as to the backlog of warrants in Harris County. Appellant agreed, and the stipulation follows:

1) As of June 1984, in Harris County there were 12,620 out-of-county and 18,000 in-county outstanding warrants;

2) the Harris County Sheriff's Office (HCSO) receives approximately 75–100 new in-county felony warrants each day and 200–300 teletypes each month;

3) the HCSO has 26 deputy sheriff's in the warrant service division, working in 13 two man teams;

4) the HCSO attempts to serve approximately 130 warrants/day but successfully serves approximately 500/month.

(R. II–58).

The State also filed a response to appellant's motion for dismissal, arguing that the Speedy Trial Act was unconstitutional. In part, the motion stated:

The State would show that the caption of said bill [Acts 1977, 65th Leg., Ch. 787, pg. 1970] is defective in that it does not and did not contain sufficient information as to inform members of the Legislature as to its content and therefore violates the caption requirement and Art. III, Sec. 35 of The Texas Constitution.

The State would further show that the Texas Speedy Trial Act is a violation of the separation of powers doctrine, Art. II, Sec. 1, and also is a violation of The Texas Constitution, Art. V, Sec. 8, Art. V, Sec. 16, Art. V, Sec. 19, and any other applicable provisions of the Texas Constitution.

(R. I–8).

At the conclusion of the hearing, the trial court agreed with appellant that the State had violated the Act but denied appellant's motion after holding the Act unconstitutional. No reason was given by the trial court for its ruling.

On October 3, 1984, appellant entered a plea of guilty and was sentenced pursuant to a plea bargain that included preservation of his claim for "the limited area of the constitutionality of the Speedy Trial Act." (Record of Guilty Plea, pp. 5, 10, 11). On appeal, appellant raised his Speedy Trial claim as his sole ground of error. In a supplemental brief, appellant responded to the State's constitutional attacks upon the Act and also claimed not to have waived his right to a speedy trial under either the United States or Texas Constitutions.

## II. Requirement of Present Injury

Before a court decides an issue involving the constitutionality of a statute, it must first assure itself that the party raising such a claim has presently been injured by the statute. *Ex parte Spring*, 586 S.W.2d 482, 485 (Tex.Cr.App.1979) and cases cited therein. This requirement stems from our reluctance to decide constitutional questions unless absolutely necessary. *Ex parte Salfen*, 618 S.W.2d 766, 770 (Tex.Cr.App.1981). Therefore, this Court must assure itself that the State's constitutional claim is not "based upon an apprehension of future injury." *Spring*, supra.

The Court of Appeals, without citing any authority, held that "[t]he record supports the trial court's ruling that the State was not ready for trial within 120 days after commencement of this felony criminal action." [4] *Meshell*, supra, slip op. at 2. If the Court of Appeals was correct, then the trial court would be required to dismiss the indictment, thus barring the State from further prosecution of appellant. Art. 28.061, V.A.C.C.P. It is this threat of dismissal with prejudice that establishes present injury to the State in this cause.

Article 32A.02, § 1(1), supra, requires the State to be ready for trial within 120 days after commencement of a felony criminal action or risk dismissal of the indictment with prejudice.[5] *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App.1979); Art. 28.061, supra. A felony criminal action commences when an indictment against a defendant for a felony offense is filed in court or when the defendant is arrested for the same offense, whichever occurs first. Art. 32A.02, § 2(a), supra; *Euziere v. State*, 648 S.W.2d 700, 704–705 (Tex.Cr.App.1983). However, a defendant must make a claim under the Act before the State is required to prove its readiness. Art. 32A.02, § 3, supra; *Barfield*, supra, at 542.

Once a defendant has raised a claim under the Act, the State must respond with proof of its readiness for trial. *Id.* Normally, a *prima facie* showing of readiness will take the form of an announcement that the State is ready for trial and has been ready at all times required by the Act. *Id.* However, further proof may be necessary if the defendant rebuts the announcement by demonstrating that the State was not ready for trial within 120 days after commencement of the felony criminal action. *Id.*

"... [S]ecuring the defendant's presence is a readiness burden which falls upon the State under the Speedy Trial Act." *Lyles v. State*, 653 S.W.2d 775, 777 (Tex.Cr.App.1983). See Art. 32A.02, § 4(4), (5) & (9), supra. Even if a defendant's location is known, the State must exert due diligence in obtaining his presence for trial. Art. 32A.02, § 4(5), supra; *Ex parte Hilliard*, 687 S.W.2d 316, 319 (Tex.Cr.App. 1985). Moreover, "[t]he prosecutor cannot

---

**4.** The absence of supporting authority is not surprising because the State conceded to the Court of Appeals that it had violated Article 32A.02, supra, and "that [a]ppellant is entitled to be discharged if said article is in fact [held] constitutional." (State's Brief in Court of Appeals, p. 2). However, in light of our requirement that actual present injury occur before addressing a constitutional question, we need not accept the State's concession.

**5.** Article 32A.02, § 1(1), V.A.C.C.P., in pertinent part, provides:

"A court shall grant a motion to set aside an indictment ... if the state is not ready for trial within:
 (1) 120 days of the commencement of a criminal action if the defendant is accused of a felony...."

excuse a lack of due diligence on his part [in obtaining the defendant's presence] by pointing the finger at the Sheriff or other law enforcement agency." *Lyles, supra,* at 779. Indeed, if a prosecutor seeks the presence of a defendant by capias, he "is obliged by [his] own assigned responsibility to exercise due diligence to follow though in the endeavor to obtain the presence of an accused for trial." *Id.,* at 780 (Clinton, J., concurring).

In the trial court of the instant case, appellant rebutted the State's readiness by showing that his presence had not been obtained until at least 12 months had elapsed from the time he was indicted by a Freestone County grand jury on July 21, 1983 to his arrest on August 6, 1984. This time period *obviously* exceeded the 120 day time limit of the Act.

The Freestone County Attorney countered that Article 32A.02, § 4(10), supra, excused the delay in his preparation for trial, *vis a vis* obtaining appellant's presence.[6] The Freestone County Attorney argued that the Harris County Sheriff Department's backlog in executing warrants presented an "exceptional circumstance" that excused the one year delay in arresting appellant. However, before the Court of Appeals, the State conceded that it had violated the Act by failing to obtain appellant's presence within 120 days of indictment. See n. 4, *infra,* at 260.

█ In the instant case, the Freestone County Attorney did not recontact the Harris County Sheriff's Department throughout the yearlong delay in appellant's arrest. Nor did the County Attorney attempt to enforce the warrant through some officer directly under his control. In the absence of such a showing of due diligence, the Act requires the County Attorney to accept complete responsibility for the absence of appellant and his subsequent lack of "readiness" for trial.

Article 32A.02, § 4(10), supra, does not excuse a prosecutor from exercising due diligence in obtaining a defendant's presence by shifting the blame to another offi-

cial, e.g., a sheriff. Instead, Article 32A.02, § 4(10), creates an exception for prosecutorial delay resulting from some exceptional circumstance other than a backlog, staff shortage or general negligence. *Santibanez v. State,* 717 S.W.2d 326 (Tex. Cr.App.1986).

Under these circumstances, we find that the Court of Appeals correctly held that the State violated the readiness requirement of the Act by not obtaining appellant's presence within 120 days after indictment. Unless the Act is held unconstitutional, the indictment against appellant must be dismissed with prejudice. Therefore, we find that the State has established present injury under the Act.

### III. Defective Caption

The Court of Appeals held the Act unconstitutional after finding that its caption violated the notice requirement of Article III, § 35, of the Texas Constitution. *Meshell, supra,* at 2-3. The Court of Appeals, citing *Ex parte Crisp,* 661 S.W.2d 944 (Tex.Cr. App.1983), reh'g denied, 661 S.W.2d 956, specifically held that the caption to Acts 1977, 65th Leg., p. 1970, ch. 787, which contains the Speedy Trial Act, failed to provide the Legislature with adequate notice of its contents, thus rendering the Act void. *Meshell,* supra.

█ Appellant argues that the Court of Appeals incorrectly applied *Crisp,* supra. However, we need not address the merits of the State's claim, because Article III, § 35, of the Texas Constitution was recently amended to make the Legislature solely responsible for complying with caption requirements. See *Baggett v. State,* 722 S.W.2d 700, 702 (Tex.Cr.App.1987). Courts "no longer [have] the power to declare an act of the Legislature unconstitutional due to the insufficiency of the caption." *Id.* Therefore, the Court of Appeals' decision is moot. Cf. *Coronado v. State,* 725 S.W.2d 253 (Tex.Cr.App.1987) (vacating and remanding decision of court of appeals on sufficiency of caption of Speedy Trial Act).

---

6. Article 32A.02, § 4(10), supra, allows the State to except from the 120 day time requirement

"any other reasonable period of delay that is justified by exceptional circumstances."

The Court of Appeals also overruled the State's two alternative bases for holding the Act unconstitutional. See n. 3, *infra*, at 260 and discussion *post*. If either of these arguments are sufficient to hold the Act unconstitutional, then the Court of Appeals' decision must be upheld, albeit for a different reason. Therefore, we now address those arguments.

## IV. Separation of Powers

The Court of Appeals held that the Act does not violate the separation of powers doctrine as contained in Article II, § 1, supra, and overruled the State's arguments without elaboration or discussion. *Meshell*, supra, at 2.

The State now argues that the Court of Appeals incorrectly overruled its claim because the Act violates Article II, § 1, supra, for two reasons. First, the Act violates the separation of powers clause by being so vague as to require the judiciary to legislate under the guise of interpreting the Act. Second, the Act violates the separation of powers clause by depriving the Freestone County Attorney of his right to exercise judgment and discretion in performing his exclusive prosecutorial function. We will address the latter argument first.

Soon after the Speedy Trial Act became effective in 1979, Judge Clinton prophesied that the Speedy Trial Act was "subject to an attack that its effects violate the separation of powers provisions of Article II of the Constitution of the State of Texas." *Ordunez v. Bean*, 579 S.W.2d 911, 915 (Tex.Cr.App.1979) (Clinton, J., concurring). Specifically, Judge Clinton, suggested that "[t]he Speedy Trial Act deprives prosecuting attorneys of their right to exercise judgment and discretion in performing their exclusive prosecutorial function." *Id.*[7] After the passage of nearly ten years since the promulgation of the Act, that very issue is now before this Court.[8]

Article II, § 1, supra, in a single, tersely phrased paragraph, provides that the constitutional division of the government into three departments (Legislative, Executive and Judicial) shall remain intact, "except in the instances herein expressly permitted." This separation of the powers of government ensures "that a power which has been granted to one department of government may be exercised only by that branch to the exclusion of others." *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex.Cr.App. 1974), citing *Snodgrass v. State*, 67 Tex.Cr. R. 615, 150 S.W. 162 (1912). The separation of powers doctrine therefore requires that "any attempt by one department of government to interfere with the powers of another is null and void." *Giles*, supra, citing *Ex parte Rice*, 72 Tex.Cr.R. 587, 162 S.W. 891 (1914).

Although one department has occasionally exercised a power that would otherwise seem to fit within the power of another department, our courts have only approved those actions when authorized by an express provision of the Constitution. See, e.g., *Government Services Ins. Underwriters v. Jones*, 368 S.W.2d 560 (Tex.1963) (Legislature could provide for legislative continuance under express power to establish rules of court in Article V, § 25, of the Texas Constitution); *Ex parte Youngblood*, 251 S.W. 509 (Tex.Cr.App.1923) (Legislature could not delegate contempt power to committee under limited power of Article III, § 15, of the Texas Constitution).

---

7. Judge Clinton also suggested that the Act "trenches upon power and authority of state trial courts to manage their affairs, including control of their dockets ... [citations omitted]." *Id.* However, no such claim is made in the instant case, and we express no opinion on its merits.

8. We note that the usurpation of power will not receive sanction by reason of a long and unprotested continuation. *Rochelle v. Lane*, 105 Tex. 350, 148 S.W. 558, 560 (1912). See, e.g., *I.N.S. v.*

*Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (declaring Immigration and Nationality Act, § 244(c)(2), unconstitutional some 32 years after passage of original bill); *Northern Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (declaring Bankruptcy Reform Act of 1978 unconstitutional four years after effective date). But cf. *Director, etc. v. Printing Industries Ass'n*, 600 S.W.2d 264, 270–71 (Tex.1980) (Pope, J., dissenting).

In the instant case, the State argues that the Legislative department has unconstitutionally encroached upon the Judicial department by infringing upon the exclusive prosecutorial discretion of the Freestone County Attorney. We must first determine whether the Freestone County Attorney is entitled to protection under Article II, § 1, supra.

The office of county attorney, as well as district and criminal district attorney, is established in Article V, § 21, of the Texas Constitution:

A County Attorney, for counties in which there is not a resident Criminal District Attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the Governor, and hold his office for the term of four years. In case of vacancy the Commissioners Court of the county shall have the power to appoint a County Attorney until the next general election. The County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature. The Legislature may provide for the election of District Attorneys in such districts, as may be deemed necessary and make provision for the compensation of District Attorneys and County Attorneys. District Attorneys shall hold office for a term of four years, and until their successors have qualified.

By establishing the office of county attorney under Article V, the authors of the Texas Constitution placed those officers within the Judicial department.[9]

In Freestone County, the Legislature has not created either a District Attorney or a

Criminal District Attorney's office. See V.T.C.A., Government Code §§ 24.179, 44.-181, 45.181 (1986 Pamphlet). Therefore, only the Freestone County Attorney is vested with the constitutional duty "to represent the State in all cases in the District and inferior courts" in Freestone County. Art. V, § 21, supra. See *Hill County v. Sheppard*, 142 Tex. 358, 178 S.W.2d 261 (1944); *Harris County v. Stewart*, 91 Tex. 133, 41 S.W. 650 (1897).[10]

■ The Freestone County Attorney, having been granted the exclusive right within the Judicial department "to represent the State in all cases in the District and inferior courts," is entitled to be protected by the separation of powers doctrine contained in Article II, § 1, supra. *State v. Moore*, 57 Tex. 307, 314 (1882). In *Moore*, supra, at 307, the Attorney General, a member of the Executive department, argued that he had the exclusive right to prosecute a defaulting tax collector and his sureties. The trial judge had given the Travis County Attorney exclusive control of the lawsuit. *Id.* at 310. The Supreme Court held that the Travis County Attorney, having specifically been given the duty, under Article V, § 21, supra, "of representing the state *in all suits* in the district and inferior courts," had exclusive control of the lawsuit. *Id.* at 316 (emphasis in original). In reaching that conclusion, the Supreme Court relied upon Article II, § 1, supra, and stated:

It must be presumed that the constitution, in selecting the depositaries of a given power, *unless it is otherwise expressed,* intended that the depositary should exercise an exclusive power, with which the legislature could not interfere by appointing some other officer to exercise of (sic) the power.

*Id.* at 314 (emphasis added).

This principle, as applied to county attorneys in *Moore*, supra, was subsequently

---

**9.** We acknowledge that some duties of county and district attorneys might more accurately be characterized as executive in nature; however, because the instant case involves a conflict between the Legislative and Judicial departments, such distinctions are unnecessary.

**10.** For a more complete explanation of the cursory manner in which Article V, § 21, supra, controls legislative creation of the various offices of district attorney, criminal district attorney and county attorney, see *The Constitution of the State of Texas: An Annotated and Comparative Analysis*, Vol I, ed. George Braden (Austin: Texas Legislative Council, 1977), pp. 463–467.

reaffirmed. *Brady v. Brooks*, 99 Tex. 366, 89 S.W. 1052 (1905) [11] However, in amplifying the separation of powers doctrine, the Supreme Court did hold that the Legislature could create new causes of action in favor of the state and lodge the exclusive duty to prosecute such suits in the office of the Attorney General. *Brady*, supra. See *State v. International & G.N.R. Co.*, 89 Tex. 562, 35 S.W. 1067 (1896). This apparent encroachment upon the power of district and county attorneys was permissible because an express provision of the Texas Constitution provides that the Attorney General shall "perform such other duties as may be required by law." Tex.Const., Art. IV, § 22; see *Brady*, supra, 89 S.W. at 1055–56.

Recognition by the Supreme Court that the Texas Constitution may create express power for the Legislature to alter the duties of a county attorney's constitutional office is consistent with the separation of powers doctrine because, as we noted above, Article II, § 1, supra, specifically provides that the doctrine is subject to exceptions "expressly permitted" in the constitution. See *Annotated and Comparative Analysis*, supra, at 91.

In applying the separation of powers doctrine, the Supreme Court has consistently prevented the Legislature from removing or abridging the constitutional duties of county attorneys. *Hill County*, supra; *Maud v. Terrel*, 109 Tex. 97, 200 S.W. 375 (1918). Cf. *Staples v. State*, 112 Tex. 61, 245 S.W. 639 (1922) (same protection for Attorney General). In *Hill County*, the Court, in rejecting the Legislature's attempt to create a nonconstitutional office of Criminal District Attorney to replace the criminal prosecuting duties of a county attorney, stated:

Where certain duties are imposed or specific powers are conferred upon a designated officer, the Legislature cannot withdraw them ... nor confer them upon others *nor abridge them or interfere with the officer's right to exercise them unless the Constitution expressly so provides.* [emphasis added].

*Id.* at 264. Accord *State v. Ennis*, 195 S.W.2d 151 (Tex.Civ.App.—San Antonio 1946, writ ref. n.r.e.); *Agey v. American Liberty Pipe Line Co.*, 167 S.W.2d 580, 583 (Tex.Civ.App.—Austin 1943), aff'd, 141 Tex. 379, 172 S.W.2d 972 (1943).

Although the duties of district or county attorneys are not enumerated in Article V, § 21, our courts have long recognized that, along with various civil duties, their primary function, is "to prosecute the pleas of the state in criminal cases." *Brady*, supra, 89 S.W. at 1056. Accord *Driscoll v. Harris County Com'rs Court*, 688 S.W.2d 569 (Tex.App.—Houston [14th] 1984, writ ref. n.r.e.) (opinion on rehearing); *Shepperd v. Alaniz*, 303 S.W.2d 846, 849 (Tex.Civ.App.—San Antonio 1957, no writ). Cf. *Baker v. Wade*, 743 F.2d 236, 242 & n. 28 (5th Cir.1984) ("The laws of Texas vest in district and county attorneys the exclusive responsibility and control of criminal prosecutions and certain other types of proceedings."), opinion withdrawn on reh'g, 769 F.2d 289, reh'g denied, 774 F.2d 1285, cert. denied, —— U.S. ——, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). An obvious corollary to a district or county attorney's duty to prosecute criminal cases is the utilization of his own discretion in the preparation of those cases for trial. Therefore, under the separation of powers doctrine, the Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial

---

**11.** In reaffirming the separation of powers doctrine, as applied to county attorneys, the Court stated:

Now, we do not controvert the proposition, laid down in the Moore Case, that if section 21 of Article 5 should be construed as conferring upon county and district attorneys the exclusive power to represent the state in all cases except those in which the Attorney General is expressly authorized to act, then the Legislature would be prohibited from sub-

tracting from or abridging the powers so conferred.

*Id.* 89 S.W. at 1055. For other cases noting the continuing vitality of *Moore*, see *Hill v. Texas Water Quality Bd.*, 568 S.W.2d 738 (Tex.Civ.App.—Austin 1978, writ ref. n.r.e.); *State v. Walker-Texas Investment Co.*, 325 S.W.2d 209, 212 (Tex.Civ.App.—San Antonio 1959), writ ref. n.r.e., 160 Tex. 256, 328 S.W.2d 294 (1959) (per curiam); *Upton v. City of San Angelo*, 42 Tex.Civ.App. 76, 94 S.W. 436 (Austin 1906, no writ).

function, unless authorized by an express constitutional provision.

■ In the instant case, a dissenting member of the Court of Appeals argued that the Legislature has been given express authority to infringe upon the prosecutorial function by its constitutional grant of rule-making power. *Meshell,* supra, at 5 (Thomas, J., dissenting). Indeed, Legislative authority to establish procedural rules of court is provided in Article V, § 25, of the Texas Constitution:

The Supreme Court shall have power to make and establish rules of procedure *not inconsistent with the laws of the State* for the government of said court and the other courts of this State to expedite the dispatch of business therein.

(emphasis added). Although negatively worded, this provision clearly intends that the Legislature have ultimate control over establishment of procedural rules of court. *Government Services,* supra, at 563.[12] The Legislature, therefore, has "complete authority to pass any law regulating the means, manner, and mode of assertion of any of [a defendant's] rights in the court." *Johnson v. State,* 42 Tex.Cr.R. 87, 58 S.W. 60, 71 (1900).

■ A prerequisite to the Legislature's power to act under Article V, § 25, however, is the existence of a right for which the Legislature can provide procedural guidelines. Were it otherwise, the procedural legislation would itself create a substantive "right," and exceed the grant of power in Article V, § 25, supra, thereby encroaching upon another department. *Williams v. State,* 707 S.W.2d 40 (Tex.Cr.

App.1986) (per curiam) (Legislature exceeded limited power to enact procedural guidelines for bail and bail forfeiture); *Youngblood,* supra (Legislature exceeded limited authority of contempt power); *Langever v. Miller,* 124 Tex. 80, 76 S.W.2d 1025, 1035–38 (1934) (legislative power to enact procedural guidelines could not support substantive invasion of court's ability to enforce valid prior judgment). Permitting such a result would by implication give the Legislature unlimited power to infringe upon the substantive power of the Judicial department under the guise of establishing "rules of court," thus rendering the separation of powers doctrine meaningless.[13] Cf. *Williams,* supra, at 47 (Allowing Legislature to alter final judgment under pretense of regulating procedures for bail would make "the power of the judicial branch ... a mockery, subject to the whim of the Legislature.").

In enacting the Speedy Trial Act, the Legislature has *attempted* to provide procedural guidelines for statutory enforcement of a defendant's constitutional right to a speedy trial.[14] See *Ordunez,* supra, at 916–17 (Clinton, J., concurring). At first blush this Act would seem to satisfy the requirement that a right exist before procedural guidelines could be enacted to enforce that right. However, the Act is not directed at providing procedural guidelines for the speedy *commencement of trial.* See *id.* at 917 (Clinton, J., concurring). Instead, as this Court has consistently held, the Act is directed at speeding the *prosecutor's preparation and ultimate readiness for trial. Santibanez,* supra; *Barfield; Ordunez,* supra.[15]

---

12. For a general explanation of the manner in which rule-making power is distributed to the various departments, see *Annotated and Comparative Analysis,* supra, at 471–72.

13. Of course, the Legislature could establish a new right under its general plenary power if that right did not infringe upon another department's separate power.

14. Our state constitution provides: "In all criminal prosecutions the accused shall have a speedy trial...." Tex.Const. art. I, § 10. The federal constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const. amend VI.

The Sixth Amendment right to a speedy trial was made applicable to the states through the Fourteenth Amendment in *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Regardless, the same speedy trial right is provided under both state and federal clauses. *Hull v. State,* 699 S.W.2d 220, 221 (Tex.Cr.App. 1985); *Turner v. State,* 545 S.W.2d 133, 136 (Tex.Cr.App.1977).

15. In fact, the caption to an amendment to the Act provides the following description: "An Act relating to the time limits *for the state to be ready for trial* in certain misdemeanor offenses...." Acts 1979, 66th Leg., p. 4, ch. 3 (emphasis added). Clearly, by 1979 the Legisla-

We acknowledge that enforcing a defendant's constitutional right to a speedy trial under federal and state constitutions in some instances may require some intrusion into the prosecutor's discretion to prepare for trial. For example, under both federal and state speedy trial clauses, the delay by a government official in obtaining a defendant's presence following his indictment could cause a delay in the commencement of the trial. That delay, even if the result of negligence or staff shortage, may ultimately be attributed to the prosecutor. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *United States v. Carter*, 603 F.2d 1204, 1207 (5th Cir.1979). However, the Speedy Trial Clauses, unlike the Speedy Trial Act, even when effecting a prosecutor's discretion in preparing for trial, are directed at assuring speedy *commencement of trial.* The Speedy Trial Clauses assure speedy commencement of trial by focusing on at least four factors directly related to commencement of trial: 1) the length of the delay before trial, 2) the reason for the delay, 3) the defendant's assertion of his right to a speedy trial and 4) any prejudice to a defendant resulting from that delay in trial. *Barker*, supra; *Hull*, supra; *Turner*, supra.

Beyond any scenario contemplated by the Legislature, the Act fails to incorporate these factors and thereby seriously encroaches upon a prosecutor's exclusive function without the authority of an express constitutional provision.[16] First, under the Act, few distinctions are drawn based upon the reason for delay. A prosecutor's failure to obtain appellant's presence weights equally as heavy upon him when the delay is attributed to negligence or staff shortage as when attributed to deliberate behavior. See *Santibanez*, supra. Under the Speedy Trial Clauses, "a

deliberate attempt to delay trial" is weighed much more heavily against the prosecutor than a "more neutral reason such as negligence or overcrowded courts." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 (emphasis added). See also *United States v. Carter*, 603 F.2d 1204, 1207 (5th Cir. 1979).

Second, under the Act, no consideration is given to a defendant's failure to request a speedy trial. In fact, a defendant need not request a speedy trial before seeking relief. See Art. 32A.02, § 3, V.A.C.C.P. Indeed, requesting a speedy trial might hurt a defendant's chances for dismissal by alerting an unaware prosecutor to announce ready. Under the Speedy Trial Clauses, "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93.

Third, and probably most critically, the Act does not require a defendant to show any prejudice. See Art. 32A.02, supra. Under the Speedy Trial Clauses, a defendant must show that he was prejudiced by the delay in his trial, with particular importance attached to any impairment of his defense. *Id.*, at 532, 92 S.Ct. at 2193.

If the Act were enforced against the Freestone County Attorney in the instant case, he would be deprived of his exclusive prosecutorial discretion in preparing for trial without any consideration for the factors used in determining whether appellant has been deprived of his constitutional right to a speedy trial. First, no consideration is given to the Freestone County Attorney's reason for delay. Neither his own negligence nor the Harris County Sheriff's backlog can mitigate any delay in obtaining appellant's presence. Second, it is irrele-

---

ture understood that the Act focused upon prosecutorial readiness for trial rather than actual commencement of trial.

**16.** We have no doubt that the Legislature's motives were conscientiously directed at assuring defendants of speedy trials. However, it is also clear that there was some doubt even during legislative hearings as to the manner in which the Speedy Trial Act would accomplish that

objective. The majority of the speakers at those hearings presumed that the Act required a speedy commencement of trial rather than a speedy announcement of ready for trial by the prosecutor. Hearings before Senate Subcommittee on Criminal Matters on Senate Bill 1043, April 20, 1977; Hearings before House Committee on Criminal Jurisprudence on House Bill 1654, May 10, 1977.

vant whether appellant actually wanted a speedy trial. We acknowledge that appellant was unaware of the indictment pending against him in Freestone County; however, he was not even required to testify that he would have requested a speedy trial had he been aware of the indictment. Third, and probably most importantly, it is irrelevant whether appellant actually suffered any prejudice as a result of the delay in his trial. Appellant was not required to show *any* prejudice.

 By failing to show some deference to these factors and by focusing upon a prosecutor's readiness for trial, the Legislature has not created an Act that assures appellant of a speedy trial. Instead, it has only guaranteed appellant a dismissal with prejudice upon the Freestone County Attorney's delay in obtaining appellant's presence. That guarantee, however, deprived the Freestone County Attorney of his exclusive prosecutorial discretion in preparing for trial in the absence of any constitutional authorization.

While legislatively forcing a prosecutor's readiness for trial may occasionally have an incidental salutary effect of speeding a case to trial, the Speedy Trial Act does not even accomplish that objective. Instead, the Act could more accurately be titled the "Speedy Announcement of Ready Act." See generally Campbell & Edwards, *The Right to a Speedy Trial: An Overview of the Texas Act,* 44 Tex.B.J. 152 (1981). Once the State has shown itself ready for trial, the Act does not place any further burden upon the State to proceed to trial.[17]

In granting appellant such an overly broad power to control the Freestone County Attorney's exclusive discretion in preparing for trial, the Legislature has exceeded its authority to protect appellant's substantive right to a speedy trial through procedural legislation. Unless broad legislative authority for controlling the Freestone County Attorney's discretion in pre-

paring a case for trial can be found elsewhere, the Legislature has violated the separation of powers doctrine.

Because we are not aware of any other constitutional provision expressly granting the Legislature the power to control a prosecutor's preparation for trial, we must conclude that the Legislature, by providing for such a right in the instant case, violated the separation of powers doctrine, Article II, § 1, supra. Therefore, we hold that Articles 28.061 & 32A.02 §§ 1(1), 4(5) & 4(10), supra, are unconstitutional.[18] Cf. *Williams,* supra; *Youngblood,* supra; *Langever,* supra.

 A portion of a legislative enactment, if declared unconstitutional, does not necessarily render the entire act invalid. In deciding whether the remainder of an act may remain viable, courts have considered several factors.

... Invalidity of a part [of a legislative enactment] does not destroy the entire act, unless the valid part is so intermingled with all parts of the act so as to make it impossible to separate them, and so as to preclude the presumption that the legislature would have passed the act anyhow.

... The test is not whether constitutional and unconstitutional provisions are contained in the same section, for the distribution into sections is purely artificial, but whether the provisions are essentially and inseparably connected in substance. [footnotes omitted]

12 Tex.Jur.3d, Constitutional Law § 42.

 Article 32A.02, supra, clearly requires the application of its various provisions based upon an endless variety of factual situations. Without the provisions that we have just declared unconstitutional, Article 32A.02, supra, as a whole is rendered incapable of reasonable use. In addition, we find it obvious that the Legislature

---

17. This fact led a member of this Court to comment that "trials of criminal prosecutions may be only *relatively accelerated by the strictest* compliance with the provisions of the [A]ct." *Ordunez,* supra, at 919 (Clinton, J., concurring).

18. Consequently, we need not address the State's claim that the separation of powers doctrine was violated because the Act requires judicial legislating. See discussion, *infra,* at 265–266.

would not have passed Article 32A.02, § 1(1), supra, without including the enforcement mechanism of Article 28.061, supra. Therefore, we hold that Chapter 32A.02, in its entirety, and Article 28.061, supra, are rendered void.

## V. Speedy Trial

In his second ground of review, appellant argues that the indictment against him should have been dismissed under either the Act or the federal and state speedy trial clauses. By holding portions of the Act unconstitutional, we have disposed of appellant's statutory claim. Therefore, we now address appellant's constitutional claim.

The Court of Appeals, despite acknowledging that it was raised for the first time on appeal, addressed appellant's claim that he was denied his constitutional right to a speedy trial. *Meshell*, supra. The Court held that appellant had failed to support his claim and overruled the ground of error. *Id.*

 A defendant's plea of guilty or *nolo contendere*, which results in assessment of punishment within the range recommended by the prosecutor, does not waive his right to complain of pretrial rulings on appeal. Art. 44.02, V.A.C.C.P.; *Morgan v. State*, 688 S.W.2d 504 (Tex.Cr. App.1985). However, a defendant may only appeal those grounds either raised in a written pretrial motion or appealed by permission of the trial court. Art. 44.08, supra.

 In the instant case, appellant's pretrial motion only raised a claim under the Act. Appellant did not raise before the trial court, either by pretrial motion or otherwise, any claim under the federal or state speedy trial clauses. Nor did the trial court rule on such a constitutional claim.

The trial court initially held in appellant's favor on his pretrial motion but ultimately denied relief after also holding the Act unconstitutional. Appellant then pled guilty with the sole understanding that he could appeal the trial court's ruling *on the constitutionality of the Act.* Therefore, we hold that appellant failed to preserve for appellate review any constitutional claim under the federal or state speedy trial clauses. We need not decide whether the Court of Appeals' decision on the merits of that constitutional claim was correct.

Although we reject its rationale, we affirm the judgment of the Court of Appeals insofar as it held Article 32A.02, supra, and Article 28.061, supra, unconstitutional.

CLINTON, Judge, dissenting.

When this Court was granted constitutional jurisdiction, power and authority to exercise discretionary review of "a decision of a Court of Appeals in a criminal case as provided by law," Article V, § 5; Articles 4.04(b), 44.01, 44.45(a), (b) and (c), V.A.C. C.P., we promptly promulgated rules of post trial and appellate procedure in criminal cases to govern the work of the Court as much as to guide practitioners seeking review.[1] Yet today, a majority of the Court demonstrates a will and determination to cast aside carefully drawn rules for orderly procedure to reach a result that law and procedural circumstances have heretofore put beyond its reach.

The posture of this cause must be understood. In the trial court appellant invoked the Texas Speedy Trial Act (Act); the State responded that on several grounds the Act is unconstitutional. The trial court agreed with appellant that the case should be dismissed, but concluded that the Act is unconstitutional and denied appellant's motion to dismiss. Appellant pleaded guilty,

---

1. See former rules 3, 302, 303, and 304, effective September 1, 1981. They have, of course, been supplanted by Texas Rules of Appellate Procedure, effective September 1, 1986, and are now Rules 1(a), 200, 201, 202. The rules contemplate that a losing party in the court of appeals may petition for review and indicate "the character of reasons that will be considered" by the Court in determining whether to grant or deny discretionary review. Recognizing there will situations in which the nominal "winning" party may nevertheless be aggrieved by some reason for decision of the court of appeals adverse to contentions made to it by that party, we provided the latter may file a petition within ten days after timely filing of the first petition. Rule 202(c).

and upon being convicted appealed to the Waco Court of Appeals.

In an unpublished opinion a majority of the Waco Court of Appeals found the Act unconstitutional on account of a defective caption under Article III, § 35. It then wrote:

"The other grounds urged by the State for declaring the Speedy Trial Act unconstitutional are without merit, and they are overruled."

As losing party Appellant filed his petition for discretionary review. He presented three questions for review, the pivotal one here being "Whether the Texas Speedy Trial Act ... is unconstitutional." In relation to that ground, however, he stated as his first reason for review that the decision of the Waco Court "is in conflict with" a cited opinion of another court of appeals, holding that the caption to the Act does meet constitutional muster, thereby invoking reason (c)(1) of former rule 302; his three other reasons implicate former rule 302(c)(2), (4) and (5), and are obviously based on the fact that the Waco Court held the Act invalid in the only particular it did, *viz:* an unconstitutional caption.[2] Naturally conditioned, in part, upon the answer to his first question, his third question is whether the indictment should have been dismissed because of failure of the State to comply with the Act (or failure to comply with constitutional requirements).

Although having also "lost" on its other claims that the Act is unconstitutional, the State did not file its own PDR pursuant to former rule 304(c); while entitled to under former rule 304(h), the State did not reply to the petition.

With only appellant seeking review, this Court granted review of his questions one and three. Notwithstanding its apparent recognition that appellant actually presents extremely narrow questions arising from the decision of the Waco Court of Appeals, a majority of the Court announces that "we have not restricted our review only to the Court of Appeal's application of Article III, § 35, supra," on the utterly fatuous notion that since "Appellant's ground of review [sic] was phrased broadly," this Court has granted review "of the entire decision of the Court of Appeals." Maj. op. at p. 248, n. 3.

Thereafter the State filed its brief. By what it calls "points of reply," the State first supports the caption ruling by the Waco Court of Appeals; secondly, asserting that district and county attorneys are "within the realm of the judicial department" by virtue of Article V, § 21, it contends that in passing the Act the Legislature "impermissibly infringed upon the powers of the judicial branch" contrary to Article II, § 1, in that the Act "deprives prosecutors of their right to exercise judgment and discretion in performing their exclusive prosecutorial functions," and "in this case the mandated dismissal of this cause pursuant to the [Act] is an unconstitutional infringement upon the powers conferred to prosecutors in exercise of their exclusive judgment and discretion by the Texas Constitution;" third, that the Act is "so vague and unenforceable" that is must survive on the support of 'judicial legislating'; and fourth, that the judiciary has violated Article II, § 1, in that by undertaking to enforce "a vague and unenforceable" legislative enactment courts "have encroached on the legislative branch and engaged in judicial legislating."

Having bypassed its right to file a PDR, Article 44.01, V.A.C.C.P. and former rule 304(c), that the State *"now* argues that the Court of Appeals incorrectly overruled its claim that the Act violates Article II, § 1," Maj. op., p. 252, will not properly present the question. Therefore, contrary to the view expressed by the majority—"that very issue is now before this Court," Maj. op., p. 252—it is not here according to the rules of this Court. It is here only because a majority wills it to be, in order to declare the Act unconstitutional.

In Parts II and III, respectively, the majority concludes that the Waco Court of

---

**2.** His second question was whether he had been given a speedy trial according to constitutional requirements.

Appeals correctly held the State did not comply with a requirement of the Act (meaning, of course, that the trial court erred in denying appellant's motion to dismiss the action), and the State's claim as well as the holding below that a defective caption renders the Act unconstitutional is "moot" under *Baggett v. State*, 722 S.W.2d 700 (Tex.Cr.App.1987) and *Coronado v. State*, 725 S.W.2d 253 (Tex.Cr.App.1987) (ordinarily meaning, of course, that appellant gains a dismissal of the prosecution). Thus far appellant is winning, but ultimately he will lose because the majority feels it "*must* further review [the decision of the Waco Court of Appeals]." [3]

Let us not torture the rules for the sake of expediency.[4]

To reach Part IV the impatient majority will have to stretch and strain without me.[5] Quo vadis?

For the reasons stated, I dissent.

3. To attribute such a mandate to the fact that "Appellant's ground of [sic] review was phrased broadly," Maj. op., p. 248, n. 3, is, well, a masterly bit of disingenuousness.

His first reason for review is that the opinion below "is in conflict with the opinion in *Wright v. State*, 696 S.W.2d 288," in which, the majority acknowledges as it truly must, the Fort Worth Court of Appeals held the caption to the Act is not constitutionally defective. His second reason is that justices of the Waco Court "*disagreed* upon a material question of law *necessary* to its decision;" that can be only the caption question for the justices *agreed* that "other grounds urged by the State for declaring the Speedy Trial Act unconstitutional are without merit." His third reason is that the Waco Court of Appeals "has declared unconstitutional a statute," being the Act and solely on the caption issue. His last reason is that the Waco Court decided "an important question of state law which had not been, but should be, settled by [this Court], and indeed we have not decided the caption issue— and now are forever barred from doing so by recently adopted amendment to Article III, § 35."

Incredible as it is, the majority would have it that appellant actually petitioned this Court to overturn conclusions of law requiring his discharge from further prosecution.

4. The ultimate irony is that, although the Waco Court of Appeals exercised its own jurisdiction, power and authority to address and decide adversely appellant's claims that his constitutional rights to a speedy trial had been denied, although his third question for review raises propriety of that decision, although this Court .

TEAGUE, Judge, dissenting.

Because the majority opinion erroneously holds that the Speedy Trial Act, see Chapter 32 of the Code of Criminal Procedure, is unconstitutional because it violates the separation of powers doctrine I am compelled to file this dissenting opinion. For reasons that I will give, I find that the Speedy Trial Act does no such thing.

Given the facts of this cause, all agree or should agree that the State failed to comply with the provisions of the Speedy Trial Act, by failing to be prepared for trial by a certain date, as required by the Act. Hon. P.K. Reiter, the trial judge, although not disagreeing with appellant that his motion to dismiss was in all things proper, cf. *Turner v. State*, 662 S.W.2d 357 (Tex.Cr.App.1984), (Held, to invoke the provisions of the Act in order to assert that he is entitled to a dismissal because the State

granted review of his third question and although the State has not complained of that grant nor briefed the issue, in Part V *sua sponte* the majority now informs appellant (and the Waco Court of Appeals) that he "failed to preserve for appellate review any constitutional claim under the federal or state speedy trial clauses." Maj. op., p. 258.

5. Since my position is that the "separation of powers" issue under Article II, § 1, is not properly before the Court, while I may now agree with much of their essence I do not join either dissenting opinion. I must observe, however, that by reason of other constitutional and statutory provisions pertaining to a speedy trial, i.e. Article I, § 10 and Article 1.05, V.A.C.C.P., "both the court and the prosecution are under *a positive duty to prevent unreasonable delay*." *Wilson v. Bowman*, 381 S.W.2d 320, 321 (Tex.1964). That the Legislature has what Judge Miller correctly calls "plenary" power to enact such laws as it finds necessary to effectuate constitutional rights and duties is so elementary that in 1969 the people repealed, *inter alia*, Article III, § 42, as being "obsolete, superfluous and unnecessary." H.J.R. No. 3, 61st Leg. p. 3230. In those lights the conclusion reached by the majority has awesome implications for survival of other legislative enactments deemed to be touching the duty of prosecuting attorneys to represent the State—when a majority of this Court is unaware of "any other constitutional provision *expressly granting the Legislature the power* [to pass them]." Tomorrow, for want of an express grant of power, it may be any other arguably offensive provision in the Code of Criminal Procedure.

failed to comply with the Act, the defendant must expressly refer to the Act), but agreeing with appellant that he had sustained his burden in proving his motion to dismiss, but without giving any reasons for his conclusion, merely stated for the record that "the Court is convinced the Speedy Trial Act is unconstitutional and I so declare", and overruled the motion and thereafter found appellant guilty.

In an unpublished majority opinion, the Waco Court of Appeals affirmed the trial court's judgment of conviction. See *Meshell v. State*, (Tex.App.—Waco No. 10–84–168–CR, October 17, 1985). After purchasing the State's erroneous contention that *Ex parte Crisp*, 661 S.W.2d 956 (Tex. Cr.App.1983), controlled this cause, the court of appeals held that the Act's caption rendered the Act unconstitutional because it violated Art. III, § 35 of the Texas Constitution. In *Baggett v. State*, 722 S.W.2d 700 (Tex.Cr.App.1987), this Court held that because Article III, Sec. 35 has now been amended, courts "no longer [have] the power to declare an Act of the Legislature unconstitutional due to the insufficiency of the caption." Thus, the constitutional amendment renders *that* issue moot and the majority opinion correctly does not discuss that part of the court of appeals' opinion that concerns the *caption* to the Speedy Trial Act.

The court of appeals also found that the State's other reasons why it asserted that the Act was unconstitutional, namely, "because the Texas Legislature in its enactment of the Speedy Trial Act, impermissibly infringed or encroached upon the powers of the judicial branch of our government in contravention of Article II, Sec. 1, of the Texas Constitution"; "because it is so vague and unenforceable that it must live on the support it can find from 'judicial legislating'"; and "because the judiciary has violated the separation of powers provisions of Article II, Sec. 1, of the Texas Constitution in that in their efforts to uphold a vague and unenforceable piece of legislation, the courts have encroached upon the legislative branch and have engaged in judicial legislating" were without merit and summarily overruled them without any discussion. The court of appeals held: "The other grounds urged by the State for declaring the Speedy Trial Act unconstitutional are without merit, and they are overruled."

I pause to point out that Justice Thomas of the court of appeals filed a very compelling and persuasive dissenting opinion in *Meshell v. State*, supra, which in my view may be the best opinion to ever come out of the Waco Court of Appeals in a criminal case since it obtained criminal appellate jurisdiction. It should certainly be published so that all members of the Bench and Bar of this State will have easy access to this appellate court work of art. In any event, the reader should obtain a copy of the opinion, and carefully read it before trying to make heads or tails out of what the puzzling majority opinion states and holds because I believe that what Justice Thomas' opinion states will enable the reader of the majority opinion to easily see why the majority opinion is so wrong, wrong, wrong, oh so dead wrong, in holding that the Speedy Trial Act is unconstitutional because it violates the doctrine of separation of powers.

The State,[1] under its arguments why it claims that the Act is unconstitutional because it violates the separation of powers doctrine, which arguments were summarily overruled by the court of appeals, asserts that the "legislative enactment deprives prosecutors of their right to exercise judgment and discretion in performing their exclusive prosecutorial functions. Further, this Statute impermissibly dictates what the State must show to demonstrate its

---

1. Although Judge Clinton is technically correct, that the State's contention that the Speedy Trial Act is unconstitutional because it violates the doctrine of separation of powers is not properly before us, see the dissenting opinion he has filed in this cause, to adopt in this cause what he advocates would, I believe, amount to "judicial wheelspinning." The issue that the State presents must be resolved, here and now, for better or for worse. Of course, if worse, a different aggressive and assertive majority of this Court will be free in the future to expressly overrule what today's aggressive and assertive majority states and holds.

'readiness for trial.' See Article 32A.02, Sec. 1, supra." The State also implicitly argues that because the Act usurped functions that had been constitutionally allocated solely to *the judiciary*, (by the State, the prosecution is now not only an equal member of the Judicial Department of this State, it is the spokesperson for that department of government, see *post*, however), it violated the separation of powers doctrine. The State next argues that because the Act is so vague and unintelligible it has become necessary for this Court to engage in a form of "judicial legislating", by "filling in the holes [of the Act] as they have been exposed", it is unconstitutional. As noted, the Waco Court of Appeals summarily overruled all of these arguments, holding rather simply: "The other grounds urged by the State for declaring the Speedy Trial Act unconstitutional are without merit, and they are overruled."

I believe that one of the major errors of the majority opinion is the fact that it reflects a total lack of appreciation and understanding of a democratically endowed form of government, which we are supposed to subscribe to in the State of Texas.

I also find that the majority opinion is a mere step away from holding that the prosecuting attorneys of this State, which presently number at least 1,085, see *Baker v. Wade*, 769 F.2d 289 (5th Cir.1985), also see *Baker v. Wade*, 743 F.2d 236 (5th Cir.1984), can never be subject to *any* procedural laws promulgated by the Legislature of this State.

Though much has been written on the doctrine of separation of powers, it is necessary to write more because it is still, as obviously evidenced by the majority opinion, one of the least understood doctrines in our law.

The object of the doctrine of separation of powers "is basic and vital, namely, to preclude a commingling of these essentially different powers of government in the same hands." *O'Donoghue v. U.S.*, 289 U.S. 516, 53 S.Ct. 740, 743, 77 L.Ed. 1356 (1933). The Supreme Court also pointed out in *O'Donoghue*, supra, that this independence of the respective branches of government does not mean that those departments of government shall not cooperate to the common end of carrying into effect the purposes of the Constitution; it simply means that the acts of each department shall never be controlled by or subjected, directly or indirectly, to the coercive influence of either of the other departments, and that each shall be subject to checks and balances by the other departments.

Chief Justice John Marshall once remarked: "The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and *the judiciary construes the laws.*" *Wayman v. Southard*, 10 Wheat 1, 46, 6 L.Ed. 253, 263 (1825). Thus, "the doctrine of separation of powers means that judicial functions shall be performed by the judiciary, and that no nonjudicial tasks shall be forced upon the judiciary; that only the legislature shall make laws establishing policy for the [State]; and that the executive shall enforce the laws and shall not be interfered with unduly in that task by either the legislature or the judiciary." Antieau, 2 *Modern Constitutional Law*, § 11.13, at page 202 (1969).

Our State Government is expressly divided into three departments of government. Art. II, Section 1, of the Texas Constitution, expressly provides: "The powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

Art. V, Section 1, provides in part: "The judicial power of this State shall be vested in one Supreme Court, in Courts of Appeals, in a Court of Criminal Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such such other courts as

may be provided by law ..." The offices of District Attorney or County Attorney are not designated as *members* of the Judicial Branch of our government, although by virtue of their placement within the judicial branch section of the Constitution they are part of the Judicial Branch of our government.

The offices of District Attorney and County Attorney were created to "represent the State in all cases in the District and inferior courts in their respective counties." The district attorney or county attorney's power to represent the State of Texas is not general but is, instead, special, being limited by the Constitution and legislation pertaining thereto. See *State v. Allen,* 32 Tex. 273 (1869); *Taff v. State,* 69 Tex.Cr.R. 528, 155 S.W. 214 (1913). The Attorney General of Texas, who is by express declaration a member of the Executive Branch of Government, is also the chief law officer of this State and the chief legal adviser to the District Attorneys and County Attorneys of this State. The relationship between the Attorney General and District Attorneys and County Attorneys of this State, however, has not always been a happy one. As reflected by the opinions, they are often at odds with one another, usually "fighting" in court over which one would represent the State of Texas in a given cause or whether the office of county attorney or district attorney in a given county should be abolished. See, for example, *Shepperd v. Alaniz,* 303 S.W.2d 846 (Tex.Civ.App.-San Antonio 1957); *Garcia v. Laughlin,* 155 Tex. 261, 285 S.W.2d 191 (1956); *Hill County v. Sheppard,* 142 Tex. 358, 178 S.W.2d 261 (1944). Also see both of the *Baker v. Wade,* supra, cases.

The majority opinion concludes: "[The Speedy Trial Act] deprived the Freestone County Attorney of his exclusive prosecutorial [judicial?] discretion in preparing for trial in the absence of any constitutional authorization." The opinion also reasons that the Act gives to *an accused* "an overly broad power to control the Freestone County Attorney's exclusive discretion in preparing for trial". The majority opinion then reaches the further conclusion: "[T]he Legislature has exceeded its authority to protect appellant's substantive right to a speedy trial through procedural legislation."

In reaching the above conclusions, the majority opinion implicates the Supreme Court decision of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and the four factors set out therein which concern the right of the accused to a speedy trial as guaranteed by the Sixth Amendment to the Federal Constitution. These factors are, however, exemplary rather than exhaustive, as the majority opinion implies.

The majority opinion states: "[U]nder the separation of powers doctrine, the Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision." This statement appears to mean that unless the Speedy Trial Act can be said to constitutionally implement the defendant's constitutional right to a speedy trial, the Legislature's decision to enact the Speedy Trial Act was an unlawful act, being in violation of the doctrine of separation of powers.

The Speedy Trial Act, however, is governed by statutory interpretation and legislative history, while the Supreme Court's analysis in *Barker v. Wingo,* supra, only applies to the assertion by a defendant of his *Federal* constitutional speedy trial right. Given this fact, many of the statements in the majority opinion, to me at least, are strangely puzzling to say the least.

The majority opinion has completely overlooked the fact that the constitutional right to a speedy trial is a substantive right while the Speedy Trial Act is only a procedural device that implements this right. See *Wade v. State,* 572 S.W.2d 533 (Tex.Cr. App.1978).

The constitutional right to a speedy trial has been hailed in most quarters as "one of the most [fundamental] rights preserved by our Constitution." It is thus one of the "fundamental" liberties embodied in the Bill of Rights which the due process clause of the Fourteenth Amendment makes appli-

cable to the States. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967).

The constitutional right to a speedy trial is a right guaranteed the accused and not the State. The right of the accused to a speedy trial is probably derived from chapter 29 of the 1215 *Magna Carta*, (ch. 40 if King John's Charter of 1215 is used). See Coke, *The Second Part of the Institutes of the Laws of England* 45 (Brooke, 5th ed., 1979). Also see the Azzize of Clarendon (1166); 2 *English Historical Documents* 408 (1953). Both the Federal and State constitutions recognize the right to a speedy trial. See the Sixth Amendment to the Federal Constitution and Art. 1, § 10, Texas Constitution.

Without statutory implementation, however, the constitutional right to a speedy trial can be an extremely hollow right to say the least.

The constitutional right to a speedy trial is actually a safeguard to prevent undue and oppressive incarceration of the accused prior to trial, to minimize anxiety and concern accompanying public accusation, and to limit the possibility that long delay will impair the ability of an accused to defend himself. See *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966); *Klopfer*, supra; *Smith v. Hooey*, 393 U.S. 374, 377–379, 89 S.Ct. 575, 577–578, 21 L.Ed.2d 607 (1969); *Dickey v. Florida*, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). When sought, our courts have usually been diligent in seeing that, within reason, the right is promptly enforced, and no amount of circumvention has been tolerated by the Supreme Court. *Smith v. Hooey*, supra; *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). However, because of the wording in the Constitutions, the right to a constitutional speedy trial is necessarily amorphous and relative. In deciding whether the right has been violated, courts usually can only identify some of the factors, see *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), and *Barker v. Wingo*, supra, which factors, contrary to what the majority opinion appears to hold, are exemplary, rather than exhaustive.

The requirements of the Speedy Trial Act are totally distinct from the Federal and State constitutional right of the accused to demand a speedy trial. Also see Cohen, "Senate Bill 1043 and the Right to a Speedy Trial in Texas," 7 *American Journal of Criminal Law* 23 (March, 1979).

The majority opinion is therefore wrong, wrong, just dead wrong, in holding that "the Act fails to incorporate these factors and thereby seriously encroaches upon a prosecutor's exclusive function *without the authority of an express constitutional provision,*" (footnote deleted) (My emphasis), i.e., because there is no constitutional provision giving the Legislature of this State the right to declare when the State must be ready for trial it has no authority to impose upon the District and County Attorneys of this State a duty to prepare for trial within a certain time period.

I thought that *Smith v. Hooey*, supra, rejected this type thinking. In *Smith v. Hooey*, supra, the Supreme Court was confronted with a case in which the defendant, a prisoner in Leavenworth, made demand after demand upon Harris County authorities to bring him back to Harris County so that he might stand trial, but his demands went unheard—until the case reached the Supreme Court of the United States. The Supreme Court granted relief. It held, inter alia, that "if the petitioner in the present case had been at large for a six-year period following his indictment, and had repeatedly demanded that he be brought to trial, the State would have been under a constitutional duty to try him ... And Texas concedes that if during that period he had been confined in a Texas prison for some other offense, its obligation would have been no less." 89 S.Ct. at 576–77.

The Supreme Court also stated the following in *Smith v. Hooey*, supra: "[W]e think the Texas [Supreme] court was mistaken in allowing doctrinaire concepts of 'power' and 'authority' to submerge the practical demands of the constitutional right to a speedy trial. Indeed, the ratio-

nale upon which the Texas Supreme Court based its denial in the case was wholly undercut last Term in *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)," which rejected the argument that the State of Oklahoma was under no obligation to request the presence of the prisoner who was then located in a federal prison outside Oklahoma. In *Smith v. Hooey,* supra, the Court concluded: "Upon petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County courts for trial."

Given what the Supreme Court stated and held in *Smith v. Hooey,* supra, the Supreme Court has already responded to and rejected the majority opinion's argument that the district and county attorneys of this State have unlimited constitutional "power", "authority" and "discretion" on the subject of the accused's right to a speedy trial. If the State may not ignore a criminal accused's request to be brought to trial, and must make a reasonable effort to secure his presence for trial, and thus must prepare for the oncoming trial, or suffer the consequences, it stands to reason that the Legislature of this State may implement the constitutional right to a speedy trial through a procedure that requires the State to be ready for trial within a certain time frame, and that is exactly what the Legislature of this State did when it enacted the Speedy Trial Act that is now under consideration.[2]

Also see *Dickey v. Florida,* supra; *Barker v. Wingo,* supra; *Beavers v. Haubert,* 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905); *Pollard v. United States,* 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); *United States v. Ewell,* supra.

In response to a trend of concern over the constitutional right to a speedy trial, many courts, federal and State, and many states, including Texas, adopted speedy trial plans to encourage swift prosecution of criminal cases. Even Congress has mandated time constraints in its Speedy Trial

Act, see 18 U.S.C. § 3161. The requirements of these plans and statutes create statutory benefits to the accused—in addition to the existing constitutional rights provided by the federal and various state constitutions. See Youngblood, "The Constitutional Right to Speedy Trial," *Case and Comment,* July-August, 1986. Effective July 1, 1978, Texas joined the ranks when it enacted the provisions of Chapter 32 of the Code of Criminal Procedure, the Speedy Trial Act now under consideration.

Although our Act provides for mandatory sanctions, it has liberal provisions for extending the pertinent intervals if based upon valid and legal extenuating circumstances.

Cohen, see "Senate Bill 1043 and the Right to a Speedy Trial in Texas," 7 *American Journal of Criminal Law,* adequately gives us a history of and the reasons for the Bill. It is thus unnecessary to say more than a little about those subjects. Also see *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979); Clinton, "Speedy Trial-Texas Style," 33 *Baylor Law Review* (Fall, 1981). Cf. *Ordunez v. Bean,* 579 S.W.2d 911 (Tex.Cr.App.1979) (Clinton, J., concurring opinion). In this instance, it is sufficient to state that the Bill was possibly one of the most uncontested "crime" bills ever to waltz through the Legislature as it received little more than a passing comment or two before the Act passed. The Act passed in the Senate without a single dissenting vote and passed by a substantial margin in the House on the consent calendar, with little change from the Senate version. Almost seven years ago, Cohen predicted: "[T]here is every indication that the Texas Speedy Trial Act should realize its purpose of achieving a speedy trial for every defendant who desires one and a speedier trial for those who do not." And, for the most part, the Speedy Trial Act has well served both accused persons and prosecutors of this State.

Notwithstanding the above, after over 8 years, an aggressive and assertive majority

---

2. By the majority opinion the amendment to the Speedy Trial Act, see H.B. 23, which has been signed by the Governor, effective September

1987, is today also, albeit implicitly, held to be unconstitutional.

of this Court now holds that the Speedy Trial Act of Texas is unconstitutional—because it violates the separation of powers doctrine. It is almost impossible for me to believe that at least five members of this Court hate the Speedy Trial Act so much that they would be willing to sacrifice their oaths of office to see that the Act is declared unconstitutional on this basis. See *Mc Clain v. State,* 687 S.W.2d 350 (Tex.Cr. App.1985), "One may dislike, or even quarrel with the legislative mandate expressed in [the Speedy Trial Act], but it must be followed so long as it is the law. An appellate judge may not pass this cup from his lips. Article I, § 16, Tex. Const. He cannot ignore facts which bring into play laws he does not personally approve, or disregard certain laws in order to reach a desired result in a particular case ..." (357) (Onion, P.J.). Also see *Wilson v. State,* 625 S.W.2d 331 (Tex.Cr.App.1981) (Clinton, J., Concurring Opinion): "The Constitution of the State of Texas mandates that before entering upon the duties of office each Judge of this Court ... must swear or affirm that he will faithfully execute the duties of office and 'will to the best of his ability preserve, protect, and defend the Constitution and laws' of the State of Texas ..."

In *United States v. Brainer,* 691 F.2d 691 (4th Cir.1982), the Fourth Circuit Court of Appeals recently reversed a district court's holding that the Federal Speedy Trial Act was invalid as "an unconstitutional encroachment upon the Judiciary." See *United States v. Brainer,* 515 F.Supp. 627, 630 (D.Md.1981); also see *United States v. Howard,* 440 F.Supp. 1106, 1109–13 (D.Md. 1977), aff'd on other grounds, 590 F.2d 564 (4th Cir.1979), cert. denied, 440 U.S. 976, 99 S.Ct. 1547, 59 L.Ed.2d 795 (1979). In reversing the district court's holding, the circuit court of appeals pointed out that notwithstanding the general mandatory requirement that the case may be dismissed if not tried within a certain period of time, the Federal Speedy Trial Act lays down no "rules of decision," but only rules of practice and procedure.

The circuit court also held that the Federal Speedy Trial Act did not arrogate "the judicial function of determining guilt or innocence." The Texas Act also does not intrude upon the judiciary's substantial decision making process of determining guilt or innocence, nor does it encroach upon the District Attorneys and County Attorneys' power to prosecute persons accused of committing crime.

The circuit court of appeals pointed out the following: "In determining whether the Speedy Trial Act disrupts the constitutional balance between Congress and the courts, 'the proper inquiry focuses on the extent to which [the Act] prevents the [judiciary] from accomplishing its constitutionality assigned functions ... A considerable degree of congressional intervention in judicial administration is constitutionally permissible if such intervention is 'justified by an overriding need to promote objectives within the congressional authority of Congress ...'"

In this instance, the office of the County Attorney of Freestone County, which was placed in Article V of the Constitution, the Constitutional provision creating the judiciary, when it was created, is asking one member of the Judicial Branch, this Court, to declare the Speedy Trial Act unconstitutional because it violates the separation of powers doctrine because it encroaches upon a non-member of the Judicial Branch of our State Government. What's going on here?

Much like *the district court* did in *Brainer,* supra, the majority opinion reasons that because the Sixth Amendment protects the right of the accused to a speedy trial in inexact terms, the Legislature is powerless to fix definite time limits in which the State has to be prepared for trial. This Court should, for the very same reasons used by the circuit court of appeals in *Brainer,* supra, reject such fallacious and specious reasoning. The circuit court of appeals also pointed out that notwithstanding the inexact terms of the constitutional right to a speedy trial, the act merely secures certain minimal trial rights against encroachment by government. "In no way does it prevent Congress from according the accused more protection than the Constitution requires, nor does it preclude Con-

gress from acting on the public's interest in speedy justice. See Barker v. Wingo, supra." (698). To hold as the majority opinion does, that the Legislature cannot enact legislation that is deemed "necessary and proper" to carrying out the constitutional right to a speedy trial, amounts to holding that the Legislature is barred from enacting any criminal procedural statute unless express permission is granted in the Constitution for it to do so. If this is true, then any prosecuting attorney of this State is free to thumb his nose at any criminal procedural statute that is presently on the books.

It is almost impossible for me to believe that anyone, especially at least five presumptively learned members of this Court, would have the audacity or temerity to question the fact that trial rights are a proper subject for the Legislature.

However, I concede that there are certain limitations on this power of the Legislature. For example, the Legislature is not free to intrude upon the zone of judicial (prosecution?) self-administration and independence to such a degree as to prevent the judiciary (the prosecution?) from accomplishing its constitutionally assigned functions. In *Brainer,* supra, the circuit court of appeals held that the Federal Speedy Trial Act was not so intrusive: "We do not think that the Act's impact upon the courts [the prosecution?] can fairly be described in such extreme terms." (698). I also do not believe that the Speedy Trial Act's impact upon the prosecution [the judiciary] can be described in such extreme terms, as the majority opinion holds.

In *Bedford v. State,* 703 S.W.2d 775 (Tex. App.-Houston [14th] 1985), Justice Sears, who authored the opinion for that Court, pointed out that we have many statutes enacted by the Legislature that provide for time limitations and sanctions on the prosecution for failure to comply. See, for example, Arts. 12.01–12.07, 51.14, V.A.A.C.P. These statutes have never been challenged by any prosecuting attorney of this State on the ground that they violated the doctrine of separation of powers. Justice Sears, like Justice Thomas did in the dis-

senting opinion that he filed in this cause, by analogy to statutes of limitations found the Speedy Trial Act did not violate the doctrine of separation of powers. Quoting from several decisions by this Court, Justice Sears pointed out that "enactments limiting the time for the prosecution of offenses are measures of public policy only and are entirely subject to the will of the legislature ...," and then correctly concluded that Articles 32A.02 and 28.061, V.A.A.C.P., appear to be no more than " 'enactments limiting the time for the prosecution of offenses,' and, as such, are properly within the sphere of legislative authority."

The Speedy Trial Act does not "tamper with" or "trample upon" any discretion that a prosecuting attorney might have. In fact, the Act does not mandate that the prosecuting attorney must do anything. If he chooses not to prepare for trial within the time limitations set out in the Act, that is within his discretion.

A good example of how the Legislature might encroach upon the authority of a district attorney or county attorney to prosecute is if the Legislature passed legislation that would approve what this Court condemned in *Holmes v. Denson,* 671 S.W. 2d 896 (Tex.Cr.App.1984), that a trial judge is with authority to enter an order dismissing criminal charges with prejudice and without the right of the prosecuting attorney to refile the charges. Clearly, such would be invalid, not because such would violate the doctrine of separation of powers, but because such would infringe upon the powers granted district attorneys and county attorneys by the Constitution.

Thus, with certain very limited exceptions, none of which are present in this cause, trial rights are a proper subject of legislation. The application of an undue burden/substantial type of test is therefore applicable. The Speedy Trial Act, however, does not unnecessarily burden the prosecution nor does it substantially interfere with the prosecutor's exercise of his power or duty to act. The provisions of the Speedy Trial Act do not require him to do anything. He can do nothing if he so chooses.

Although it can be argued that the Act slightly touches upon the prosecutor's internal discipline of his office, that is not the issue; the issue is whether the Legislature, in enacting the Speedy Trial Act, has intruded or encroached upon the prosecutor's domain or territory, i.e., the right to prosecute persons charged with committing criminal wrong. It does not.

Another thing the majority opinion overlooks is that the Act does not penalize action; it penalizes inaction by the prosecution. The Act constitutes a rational effort by the Legislature to enforce the accused's constitutional right to a speedy trial and expresses a public policy that criminal cases be tried within a certain time period. This Act, like similar statutes that have been enacted in other States of the Union, see, for example, *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, 591 (Sup.Ct. 1980), is simply an attempt by the Legislature of this State to cause the criminal justice system of this State to be "shaken by the scruff of its neck." Prepared Statement of the Assistant Attorney General, now Chief Justice, William H. Rehnquist, 1971 Senate Hearings 107, reported in A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* 17 (1980).

The Speedy Trial Act is not self-executing. It does not provide for an automatic dismissal of a cause simply because a defendant files a motion to dismiss pursuant to the Act. Under the Act, in order to obtain a dismissal, the defendant is first required to establish, if he can, that he has properly invoked the provisions of the Act. If he overcomes this hurdle, and establishes a prima facie case, then the prosecution is called upon to establish, if it can, that it was then ready for trial and had been ready for trial within the time period as set forth in the Act. If the time has run, the prosecution can fall back on the many, many exceptions or safety-valves that are provided in the Act. If valid and legal reasons are given by the prosecution, as to why it was not ready within the time period designated by the Act, it will be the rare appellate court that will reverse a defendant's conviction on the basis that the State failed to comply with the Act, as witness the few, very few, decisions of this Court and the intermediate appellate courts of this State that have granted a defendant relief on this basis. In fact, they are so few cases that are reversed by appellate courts of this State, including this Court, because of the State's failure to meet the requirements of the Speedy Trial Act, that I find this speaks well for the overwhelming majority of the prosecuting attorneys of this State. These figures also tell me that for a prosecuting attorney to lose on a defendant's motion to dismiss for failure of the State to meet the requirements of the Speedy Trial Act such closely resembles an attorney losing an uncontested divorce case. It can be done, but it is awfully hard to lose an uncontested divorce case in this State at this time. The same is true of a prosecuting attorney who loses a Speedy Trial Act motion filed by the accused.

In summary, the only thing that the Speedy Trial Act does is to require the prosecution, within certain time periods, which no one claims are unreasonable, to first procure a charging instrument, secure the presence of the accused, familiarize himself with the law and evidence of the case, and take reasonable steps to ensure the attendance of his witnesses. Isn't this what the vast majority of the prosecuting attorneys of this State, probably since 1836, have always been doing?

In 12 *Tex.Jur.3rd*, § 30, the following is written: "[A]n act will not be declared unconstitutional on the ground that it is harsh, or unjust, or that it will be productive of hardship. Nor will legislative action be annulled because it may appear to be unwise, inexpedient, impractical, unworkable, or impolitic. The wisdom and reasonableness of legislation is solely a matter of the legislature."

The Speedy Trial Act is a public policy act of the Legislature of this State that focuses solely upon prosecutorial delays and neglect, rather than upon the judicial process as a whole. *Barfield v. State*, supra. Among its many purposes is to prevent the State's abuse of the defendant's constitutional right to a speedy trial and to afford the defendant his constitu-

tional right to a prompt adjudication of any criminal charge against him, should he desire to take advantage of this right that the Legislature has given him.

Time after time, this Court has held that the Act addresses itself to prosecutorial delay, rather than to the judicial process as a whole, and because the question of the prosecutor's preparedness does not encompass the trial court or its docket, the Act does not, except in an extremely limited sense, implicate the "real" judiciary of this State. See *Santibanez v. State*, 717 S.W. 2d 326 (Tex.Cr.App.1986).

The Judicial Branch of our State Government did not authorize the trial judge in this cause to act as its spokesperson and I find nothing in the record before us where the Judicial Branch of our State Government has authorized the County Attorney of Freestone County to act as its spokesperson in this cause. I have yet to find how the County Attorney of Freestone County has "standing" to assert that the Speedy Trial Act is unconstitutional because it violates the doctrine of separation of powers, on the basis that the Act infringes or encroaches upon the functions of the *Judicial Branch* of our State Government.

Did the Speedy Trial Act infringe or encroach upon the County Attorney of Freestone's discretion to prosecute this defendant? Before the County Attorney of Freestone County can make such a claim, it is necessary that he first show that he has "standing" to make such a claim. As all that the Act did in this instance was to require him to be ready for trial within a certain time period, how has he demonstrated the manner in which his constitutionally ordained right to prosecute is adversely affected? How has the Speedy Trial Act adversely impacted his right to prosecute? How has his right to prosecute been adversely affected by the operation of the Speedy Trial Act? In this instance, the County Attorney never demonstrated to the trial court, the Waco Court of Appeals, or this Court that any constitutional right that he might have to prosecute anyone, much less this defendant, is infringed by

the Speedy Trial Act. Again, the Speedy Trial Act did not require the County Attorney of Freestone County to do anything, and by this record that is exactly what he did as far as preparing for trial. I find that the County Attorney has not established that he has "standing" to make the claim that he does in this cause, and this Court should so hold, see and compare *Lacombe v. State*, 733 P.2d 601 (Wyo.1987); *Gooden v. State*, 711 P.2d 405 (Wyo.1985), and should not annoint that office as being an equal with the other members of the Judicial Department of this State.

I conclude my dissenting opinion with this thought. Is the real reason that the aggressive and assertive majority of this Court holds as it does is because the Act is too harsh on prosecuting attorneys of this State? If that is the underlying reason for the decision to declare the Speedy Trial Act unconstitutional, I suggest that each member of the aggressive and assertive majority team read and memorize what Chief Justice Stayton of the Supreme Court of Texas stated almost 100 years ago in *Turner v. Cross*, 83 Tex. 218, 18 S.W. 578, 579 (Tex.Sup.Ct.1892):

> It is the duty of a court to administer the law as it is written, and not to make law; and however harsh a statute may seem to be, or whatever may seem to be its omission, courts cannot, on such considerations, by construction sustain its operation, or make it apply to cases to which it does not apply, without assuming functions that pertain solely to the legislative department of the government.

Life is full of hard choices. The prosecutors of this State, under the Speedy Trial Act, have the right to get prepared for trial within a certain time period or have the right to exercise their constitutional right to do nothing. See and compare *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The Speedy Trial Act is certainly not unconstitutional because it infringes or encroaches upon these rights that prosecuting attorneys of this State have. In this instance, the County Attorney of Freestone County, as was his right, chose not to get

prepared for trial within the time the Act required. He made a hard choice and should be bound by that choice.

The Speedy Trial Act is not unconstitutional because it infringes or encroaches upon the prosecutor's functions. To the majority opinion's contrary holding, I respectfully dissent.

MILLER, Judge, dissenting.

It is difficult to dignify the events of today with a written reply. The temptation is great not to so "honor" the five who have finally found a vehicle by which to negate what has come to be the law most abhorred by the prosecutors of this State. But a watershed such as this merits note, if for no other reason than that it presents a graphic public demonstration of the "philosophy over law" concept of decision-making indulged in by the five who today wreak such havoc on the integrity of the judicial appellate system. This display is even more graphic given that they have sought such a vehicle for several years now, and this is the best they could do. Be that as it may, ...

Article II, § 1 of the Texas Constitution provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Article V, § 1 of the Texas Constitution provides in part:

The judicial power of this State shall be vested in one Supreme Court, in Courts of Civil Appeals, in a Court of Criminal Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

Article V, § 21 of the Texas Constitution provides in part:

The County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; ....

The majority initially errs by finding that the office of the county attorney, and by implication any other State prosecutor, is vested with judicial power subject to protection under the separation of powers clause. It is clear from Art. V, § 1, that the *judicial power* of this State is vested in only those courts named in the constitutional provision, which does not include the county attorney. The majority's conclusion that Art. V, § 21, supra, confers judicial power on the county attorney defies the specific wording of the constitutional provision.

Moreover, such an implication would support other equally unacceptable conclusions. For instance, the sentence preceding the above quoted portion of Art. V, § 21, supra, states: "In case of vacancy the Commissioners Court of the county shall have the power to appoint a County Attorney until the next election." Under the majority's reasoning, this sentence would confer "judicial" power on the Commissioners Court subject to separation of powers protection. It is doubtful that the framers intended such a result.

Also, the cases that deal with Art. V, § 21, supra, concern encroachment by the attorney general or some other representative, upon the exclusive authority of the county attorney to represent the State. See generally Tex.Const. Art. V, § 21 (Vernon 1955), at casenotes 7 and 8. These cases do not address the issues by reference to Art. II, § 1 separation of powers, but rather resolve any disputes by referring to some specific power enumerated in the Constitution.

For instance, in *State v. Moore*, 57 Tex. 307, 314 (1882) (cited by the majority, at 254), the Attorney General brought an action against the Travis County Attorney (Moore) to compel him to pay into the state treasury money he collected from a defaulting tax collector and his sureties.

Moore contended that under the State Constitution he was entitled to prosecute and control such cases as representative of the State, and that the county was entitled to retain the money collected. The Court found that the Attorney General was empowered to initiate and prosecute suits for money due to the State, in any county of the State where there was no county or district attorney. The Court also found that the law did not delegate to the county attorney the authority to represent the State in *all* cases, since Article IV, § 22 of the Texas Constitution permitted the Attorney General to "perform such other duties as may be required by law." The Court stated:

> "It must be presumed that the constitution, in selecting the depositaries of a given power, unless it is otherwise expressed, intended that the depositary should exercise an exclusive power, with which the legislature could not interfere by appointing some other officer to the exercise of the power."

Thus, the trial court could not divest the county attorney of his authority to represent the State because the Constitution specifically delegated that power to him, not because of some perceived separation of powers problem. In other words, the judiciary was as powerless to substitute the Attorney General for the county attorney as the Attorney General was, though the judiciary be part of the same "branch" (according to the majority) of government as the county attorney. By express wording the *judicial* power of the State is vested in specifically enumerated *courts,* not in the county attorneys. Thus, county attorneys are not entitled to separation of powers protection. Be that as it may ....

Having determined that the county attorney is entitled to separation of powers protection, and in order to find a separation of powers issue, the majority next finds a power held by the county attorney subject to abrogation by some other branch. This is accomplished by initially considering the above quoted portion of Art. V, § 21, of the Constitution. The majority finds that the stated "duty to represent" is actually a "power" protected from infringement by other departments because of the separation of powers clause contained in Art. II, § 1 of the Texas Constitution.

In order to support this proposition, two Texas cases are cited, the first of which, *Moore,* supra, held that when the Constitution confers a power upon a specific depositary, that depositary is assumed to have the exclusive authority to exercise that power, unless of course, an express statement to the contrary is shown. The second case, *Brady v. Brooks,* 99 Tex. 366, 89 S.W. 1052 (1905), was similar to the *Moore* holding.

In *Brady,* supra, the Court held that although Art. 5, § 21, supra, gave the county attorney the authority to represent the State, the county attorney was not empowered to do so in *all* cases. Since Art. IV, § 22 of the Texas Constitution expressly stated that the legislature could authorize the Attorney General to "perform such other duties as may be required by law," such an express provision enabled the legislature to allow the Attorney General to represent the State in some cases.

From these cases, the majority finds that the power of the county attorney to represent the State may not be infringed upon absent an express constitutional provision to that effect. Thus, this *power* of the county attorney is entitled to protection under the separation of powers clause.

The majority refers to several other cases which confirm or support this proposition: *Hill County v. Sheppard,* 142 Tex. 358, 178 S.W.2d 261 (1944) (the Legislature may not withdraw certain duties specifically imposed upon one department, nor abridge them, nor interfere with that department's right to exercise them unless the Constitution so provides); *Maud v. Terrell,* 109 Tex. 97, 200 S.W. 375 (1918) (the Constitution lodges with the county attorneys the duty of representing the State in all cases); *Staples v. State,* 112 Tex. 61, 245 S.W. 639 (1922) (the Legislature may not restrict the power of the district and county attorneys to represent the State); and *Agey v. American Liberty Pipe Line Co.,* 141 Tex. 379, 167 S.W.2d 580 (Tex.Civ.

App.-Austin 1942), aff'd, 141 Tex. 379, 172 S.W.2d 972 (1943) (the authority to bring and maintain actions in the courts to enforce the rights of the State is vested by the Constitution exclusively in the Attorney General and the district and county attorneys, and the legislature is without the authority to divest that power or delegate it to others).

The majority then notes that the duties of county attorneys relative to representing the State are not enumerated in the Constitution. The county attorneys' primary function, however, is to prosecute the pleas of the State in criminal matters. The majority then states that:

"[a]n obvious corollary to a district or county attorney's duty to prosecute criminal cases is the utilization of his own discretion in the preparation of those cases for trial. Therefore, under the separation of powers doctrine, the Legislature may not remove or abridge a district attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision."

Maj. op. at 254.

For several reasons the majority's position that the power to represent, and its attendant protection from infringement by the legislature, may be equated with the discretion to prepare cases is unacceptable. First, the Constitution is clear and explicit in its statement of what power is to be conferred upon the county attorney: the power to represent. There is no statement concerning preparation of cases, or discretion in the preparation of those cases. Thus, the majority's characterization is not supported by the specific language of the Constitution.

Second, the cases cited by the majority do not support its contention. Those cases all concerned the authority of the Attorney General or district or county attorney to be the attorney (to the exclusion of all others) representing the State in various kinds of cases. There is no discussion of other powers, only of that to represent or prosecute cases on behalf of the State. Thus, those cases do not support the concept that the protected power to represent includes the

equally protected discretion to prepare cases.

Last, simply because a power is specified in the Constitution, and is therefore subject to protection (either as an enumerated power as in *Moore*, supra, or under the separation of powers clause) does not imply that any incident to that power is also accorded the same protection. The discretion to prepare cases is not *essential* to the county attorney's authority to plead a case on behalf of the State in a court of law. Thus, it should not be deemed subject to the same scrutiny from interference accorded to the ability of the county attorney to appear in court to represent the State's interests.

No case has ever expanded the power of the county attorney under Art. V, § 21, supra, to include function other than that he have the authority to represent the State. For all of the above reasons, the majority opinion fails to formulate a power subject to protection from interference by the legislature. Absent an articulable power, the enumerated powers doctrine of *Moore*, supra, and the separation of powers clause of Art. II, § 1, supra, are irrelevant. Be that as it may ...

After finding that the county attorney's discretion to prepare for trial is a power to be accorded protection under the separation of powers clause, the majority next finds that the Speedy Trial Act effects an impermissible encroachment on that discretion to prepare for trial. First, reference is made to Article V, § 25, of the Texas Constitution, which allows the Legislature to regulate the means, manner and mode of a defendant's assertion of rights in court. Next, the majority states that before the preceding section of the Constitution is applicable, there must be a defendant's right for which the Legislature may provide procedural guidelines. Third, the majority determines that although the Speedy Trial Act is an attempt by the Legislature to enact procedural regulations regarding a defendant's right to a speedy trial, the Act fails to actually accomplish this objective since it merely directs the time in which a county attorney may prepare for trial, and fails to account for the four-factor test for

whether a defendant's federal right to a speedy trial has been broached (as set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Based upon these findings, the majority concludes that the Act perpetrates an impermissible encroachment upon the power of the county attorney.

For a change, at least the majority's first two observations are correct: the legislature is permitted to regulate with procedural enactments the means, manner and mode of a defendant's assertion of rights in court, and necessary to that authorization is the existence of some right to assert. I cannot, however, accept the majority's remaining contentions and conclusion.

The Speedy Trial Act does more than merely speed the prosecutor's preparation and ultimate readiness for trial: it actually serves to provide the defendant with a means by which to obtain a speedy trial. Article 32A.01, V.A.C.C.P., titled *Trial Priorities*, mandates that the trial judge give priority to criminal trials over civil trials. This Article thereby addresses one of the two barriers to the obtainment of a speedy trial—that of the order or priority in the trial court's docket. Article 32A.02, V.A.C.P., titled *Time Limitations*, requires that the prosecutor be ready for trial within a certain time limit, and thereby removes the other barrier to the obtainment of a speedy trial—that of the readiness of the prosecutor to go to trial. This observation is clearly supported by the legislative committee hearings referred to in footnote 17 of the majority opinion. Thus, a defendant is accorded an opportunity to obtain a speedy trial through the procedural mechanism of giving precedence to criminal cases and requiring the State to be ready for trial within set time limits as established by the Speedy Trial Act.

The majority's position that since the Act fails to include the four-prong test in *Barker,* supra, it fails to effectuate a procedural enactment of the means, manner or mode of the defendant's assertion of a right is also untenable. There is nothing in the *Barker* opinion which indicates that its factors are to be used to gauge the adequa-

cy of a state's law regarding a speedy trial. Rather, the opinion is clearly intended to be used in a flexible manner in situations where such a statute does not exist. The United States Supreme Court states:

> "Finally, and perhaps most importantly, the right to speedy trial is a more vague concept than other procedural rights. It is, for example impossible to determine with precision when the right has been denied."

*Id.,* 92 S.Ct. at 2187. Later in the opinion, the Court continues:

> "Perhaps because the speedy trial right is so slippery, two rigid approaches are urged upon us as ways of eliminating some of the uncertainty which courts experience in protecting the right. The first suggestion is that we hold that the constitution requires a criminal defendant to be offered a trial within a specified time period. The result of such a ruling would have the virtue of clarifying when the right is infringed and of simplifying courts' application of it. *Recognizing this, some legislatures have enacted laws,* and some courts have adopted procedural rules *which more narrowly define the right.* ...
>
> But such a result would require this Court to engage in legislative rulemaking activity, rather than in the adjudicative process to which we should confine our efforts. ... *The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise."*

*Id.,* 92 S.Ct. at 2188. [Emphasis added.]

When considering the issues in *Barker,* supra, the United States Supreme Court was not faced with the validity of some procedural rule enacting the federal right to a speedy trial, but was rather in a position to construe that right without the benefit of specific legislation. Clearly, the *Barker* opinion gives no support for the contention that any procedural enactment of the speedy trial right must incorporate the four-factor test set out to guide the Supreme Court when it considered the right without legislative guidance. Actual-

ly, the opinion militates against such a holding. Thus, whether the Speedy Trial Act adequately addresses the four factors set out in the *Barker* opinion is wholly irrelevant to the determination of the viability of the Act vis-a-vis the separation of powers clause. The *Barker* discussion simply has no place in this analysis. Be that as it may....

The final link in the majority's chain, which finds that the prosecutor's discretion to prepare for trial is unduly restricted by the Speedy Trial Act is also unacceptable. The Speedy Trial Act does not run unless the prosecutor either causes or allows it to run, and then it runs only as long as the prosecutor causes or allows it to run.

A criminal action commences, for purposes of the Speedy Trial Act, when:

1. an indictment, information, or complaint against the defendant is filed in court, unless
2. prior to the filing the defendant is detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which case the criminal action commences when the defendant is arrested.

Article 32A.02, supra.

With regard to the first event stated above, the prosecutor is in control: he or she chooses when to present a case to the grand jury to seek an indictment, or when to file the information or complaint. With regard to the second event stated above, the prosecutor rarely decides when a person is to be arrested. After arrest, and prior to the filing of an indictment or information, however, the prosecutor, as the representative of the State, has considerable control over whether a defendant will be released from jail without restriction as opposed to "detained in custody or released on bond". This control is subject only to approval of the local judiciary, a fellow member of the judicial branch of government under the majority's theory. Of course if he is released from jail without having to post bond then the Act ceases to

run as surely as if there were no indictment filed in court.

Since the prosecutor maintains discretion in determining, to a large part, when the actual time limits are to toll, the prosecutor is not deprived of discretion under the provisions of the Act. The prosecutor can either cause the Act to run and be ready within the time limits of the Act, or cause it to cease running by releasing the restraint (by indictment, incarceration, etc.) on the defendant. If the prosecutor is deprived of this "power" of discretion in preparing for trial, it is only when a judge will not release a defendant from jail without bond at the prosecutor's request, as set forth above. Be that as it may....

Contrary to the majority's findings, the Speedy Trial Act is a proper exercise of the Legislature's power to regulate the means, manner and mode of assertion of a defendant's right to a speedy trial. Initially, the executive and judiciary have only those powers granted to them by the Constitution or inherent to such powers; the legislature's powers, however, are plenary, limited only by restrictions stated in or necessarily stemming from the Constitution. See *Government Services Insurance Underwriters v. Jones*, 368 S.W.2d 560 (Tex. 1963) and *In re House Bill No. 537 of the Thirty-eighth Legislature*, 113 Tex. 367, 256 S.W. 573 (1923). Thus, the starting point in any discussion of separation of those powers must be that the legislature is presumed to have the power to enact a statute absent an express or necessarily implied prohibition.

Moreover, the legislature is free to exercise its powers in any manner it sees fit; this Court does not sit in judgment of the wisdom of its actions. As was stated in *Ferrantello v. State*, 158 Tex.Cr.R. 471, 256 S.W.2d 587 (1952):

"It is wise for the courts to remember, when passing upon any question concerning the power of the Legislature, that they might, to cite a fanciful illustration, meet tomorrow and abolish the offense of murder and that such act would be constitutional. The question before the

courts is the power of the Legislature and not the wisdom of its acts."

*Id.* at 591. Thus, as long as the Speedy Trial Act was effectuated through a valid power of the Legislature, whether it accords a defendant a speedy trial in the most efficient way is irrelevant. If the Legislature has the power to enact the Act, then we may not overturn it simply because there may be a better or more thorough way to guarantee a speedy trial.

Given that the legislature's power to enact laws is plenary; given that we may not focus upon the wisdom of any particular act; given that the legislature has the power to regulate the means, manner and mode of a defendant's assertion of rights in a court under Art. V, § 25 of the Texas Constitution; answering the State's ground of error that the Act usurps the power of the prosecutor-qua-member of the judiciary is simple.

Initially: What specific power (either under an enumeration of power or separation of power theory) would the legislature be accused of usurping anyway? The Constitution speaks in terms of the county attorney "representing the State." In no way does the Act interfere with the prosecutor's power to plea on behalf of the State regarding criminal matters. Thus, there is no direct assault upon the prosecutor's power incurred by the Speedy Trial Act. Moreover, since the Act does not deprive a prosecutor of his or her discretion to bring a case, and merely states when the time limits will begin to run against the State, there is no encroachment upon an incidental power of the prosecutor *protected* by the Constitution.

Assuming that there is some power attached to the office of county attorney, the complained-of usurpation is permissible. Certainly the defendant has a right to a speedy trial under the Texas Constitution. Also, as stated before, the Speedy Trial Act does provide the defendant with a speedy trial. There is, therefore, a clear nexus between the right sought to be enacted and enactment of that right.[1] Since there is a right guaranteed by the Constitution, and since the Act effectuates that right to some extent, the Legislature has not acted beyond the scope of its power.

Last and perhaps most important, if we declare the Speedy Trial Act unconstitutional under separation of powers in the manner presented in the majority opinion, what act of the legislature regulating the prosecution is ever safe from our attack? Do we not ourselves trespass into the legislative sphere by so holding, and effect a violation of the legislature's power to pass or repeal laws? Do we not ourselves trespass into the executive sphere by so holding, and effect a violation of the executive's power to veto or approve legislation?

But alas, who is there to tell this Court when we have so transgressed, or to correct our most egregious non-federal mistakes? Under our structure of government, no one. It is this aspect which ultimately pronounces today's action by the majority so totally reprehensible.

"The accumulation of all powers, legislative, executive and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny."

James Madison, "Federalist No. 47," *The Federalist,* supra at p. 336.

---

1. The majority seems to apply the federal "rational relationship" test to judge the sufficiency of the Speedy Trial Act. That test applies when a state seeks to regulate a right conferred by the United States Constitution not considered fundamental in nature. In such an instance, the statute enacted need only bear a rational relationship to a legitimate state purpose. Compare the different test applicable when a state seeks to regulate a constitutionally protected right considered to be fundamental, then the statute must be the least intrusive means by which the right may be regulated, and the State must have a compelling State interest in enacting the legislation, i.e., the statute must be able to withstand strict scrutiny by the courts. See *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986); *Martinez v. Bynum,* 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed. 2d 879 (1983); and *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)

Since the statute involved in the case before the Court is a *State* law enacting a *State* right, neither of the preceding tests apply.

The Speedy Trial Act simply does not encroach upon any "power" of the prosecutor to an impermissible extent. There is certainly no justification or cause to find that the Act is unconstitutional as a violation of the separations of powers clause.[2]

2. In another argument advanced by the State, the Speedy Trial Act is alleged to violate the separation of powers clause between the judiciary and the legislature. This contention is also an unacceptable basis for finding the Act unconstitutional.

The origin of the doctrine of separation of powers may be traced to the writings of Montesquieu. See Montesquieu's *Spirit of Laws* (Collier's Ed., p. 151). The United States Constitution also establishes a federal government organized into three branches, but *lacks* a specific expression of the doctrine of separation of powers. See *The Constitution of the State of Texas: An Annotated and Comparative Analysis*, Vol. I, ed. George Braden (Austin: Texas Legislative Council, 1977), p. 94. The 1836 Constitution of the Republic of Texas worded its expression simply: "The powers of this government shall be divided into three departments, *viz:* legislative, executive, and judicial, which shall remain forever separate and distinct." (Art. I, Sec. 1). This provision was included in the 1845 Texas Constitution, but was moved and altered to its present wording, and express exceptions were added.

The prohibition against one department encroaching upon the powers of another is not, however, applied absolutely. "The theory of absolute separation of powers of government is no longer an accepted canon among political scientists and is inconsistent with the most recent formulations of the doctrine of separation of powers." 16 C.J.S. *Constitutional Law* § 112 (1955). Moreover, "[i]t should be noted that the powers of government actually are not divided so neatly as the theory of separation of powers would imply. ... In short, the doctrine of separation of powers should be taken seriously but not enforced too rigidly." "Citizen's Guide to the Texas Constitution", Prepared for the Texas Advisory Commission on Intergovernmental Relations by the Institute for Urban Studies, University of Houston, 1972, p. 28.

A review of Texas cases dealing with separation of powers between the judiciary and the legislature reveals a two-step analysis. First, the specific power of each department is determined; second, the manner in which that power is exercised is examined. There is no bright line rule which may be used to determine whether one department's exercise of power impermissibly encroaches upon another department's power so that the former is "exercising [a] power" of the latter under Art. II, § 1, of the Texas Constitution, supra. We may, however, be guided by a *sense of propriety* gleaned from cases discussing the subject.

Initially, "judicial power" is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision. *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641 (1933) at 644, citing *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed.2d 246 (1911). This Court has defined "judicial power" to embrace the power to hear facts, the power to decide the issues of fact raised by the pleadings, the power to decide the questions of law involved, the power to enter a judgment on the facts found based upon the law, and the power to execute the judgment or sentence. *Kelley v. State*, 676 S.W.2d 104 (Tex.Cr.App.1984) at 107, and cases cited therein.

Included in the powers of the judiciary is the power to consider the acts of the legislative branch, and if found to be contrary to the Constitution, declare those acts invalid. This power was anticipated at least as far back as Alexander Hamilton when he asserted that:

"Limitations ... [on the legislature's authority] can be preserved in practice no other way than through the medium of the courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges [in the Constitution] would amount to nothing."

Alexander Hamilton, "Federalist No. 78, The Judges as Guardians of the Constitution," *The Federalist*, ed. Benjamin Fletcher Wright (Cambridge: Harvard University Press, Belknap Press, 1961), p. 491. As always in a democracy, along with power comes commensurate responsibility. In *Lastro v. State*, 3 Tex.Cr.R. 363 (1878), at 372–373, the Court stated:

"There is no question of the power of the courts to pronounce unconstitutional acts invalid, for this power results from the duty of the courts to give effect to the laws, of which the Constitution is the highest, which could not be administered at all if nullified at the will or by the acts of the Legislature. *But it is equally well-settled that this power is not to be exercised in doubtful cases, but a just deference for the legislative department enjoins upon the courts the duty to respect its will, unless the act is clearly inconsistent with the fundamental law*, which all members of the several departments are sworn to obey." (emphasis supplied).

The power of the legislature includes the power to make, alter and repeal laws, when such power is not expressly or impliedly forbidden by other provisions of the State Constitution. *Walker v. Baker*, 145 Tex. 121, 196 S.W.2d 324 (1946). This Court has held that the legislature may define crimes and prescribe punishments. *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97 (Tex.Cr.App.1973). We have further held that the legislature has the power to regulate the assertion of individual rights in the courts. In *Johnson v. State*, 42 Tex.Cr.R. 87, 58 S.W. 60, at 61 (1900), the Court stated:

"It has never been successfully controverted, and never really seriously denied, until late,

that the legislature of the state has not ample and complete authority to pass any law regulating the means, manner, and mode of assertion of any of appellant's rights in the court; and so long as this means, manner, and mode be adequate for the assertion of either statutory or constitutional rights, just so long are the statutes and remedies provided by law constitutional."

The legislature also has "[t]he power to reform the court system to speed the process of trial and adjudication...." "The Impact of the Texas Constitution on the Legislature," Institute of Urban Studies, University of Houston (1973), p. 7.

After the specific powers involved are identified, we must determine whether the exercise of those powers by one department creates an impermissible encroachment on the powers of another department. Applying this analysis to several Texas cases discussing separation of powers provides substantial guidance for deciding whether the Speedy Trial Act effects an impermissible encroachment by the Legislature upon the judiciary.

In *Ex parte Youngblood*, 94 Tex.Cr.R. 330, 251 S.W. 509 (1923), the defendant was adjudged guilty of contempt by an investigatory committee of the House of Representatives. At that time, Art. 5517, V.A.C.S., Acts 1907, provided that a legislative investigation committee could fine or have imprisoned any witness for his failure or refusal to obey the directions of the committee and answer all pertinent questions propounded. The defendant contended that this statute violated Art. II, Sec. 1 of the Texas Constitution since the legislature was exercising judicial powers.

This Court noted that the Legislature had an express grant of authority to punish persons held in contempt under in Art. III., § 15 of the Texas Constitution, which states "Each House may punish, by imprisonment, during its sessions, any person not a member, for disrespectful or disorderly conduct in its presence, or for obstructing any of its proceedings; provided, such imprisonment shall not, at any one time, exceed forty-eight hours." Such authority is judicial in nature. The exercise of that authority, however, was subject to Art. II, Sec. 1. This Court stated: "The right to punish ... [the person] would be limited by the Constitution in the extent and in the manner of its exercise and could not be exerted by a committee." *Ex parte Youngblood*, supra, 251 S.W. at 512. Since the Constitution did not specifically permit the Legislature to delegate its contempt punishment authority, the statute authorizing a judgment of contempt made by the committee was held to be unconstitutional and the defendant was ordered discharged.

Applying the preceding two-step analysis to this case explains the result reached by the Court. The judicial power involved was the power to render a judgment of contempt; the legislative power was an "expressly provided" for exception in Art. III, § 15 of the Texas Constitution which permitted the legislature to exercise the judicial power and render such a judgment. Since the Constitution did not specifically permit the legislature to delegate its contempt judgment authority, the legislative committee had encroached excessively upon the powers of the judiciary by rendering a judgment of contempt.

In 1952, this Court had occasion to again examine the Texas doctrine of separation of powers. In *Ferrantello v. State*, 158 Tex.Cr.R. 471, 256 S.W.2d 587 (1952), a defendant was convicted under Art. 5429a, § 3, V.A.C.S., for failing to respond to questions propounded to him by a legislative investigative committee. The facts of the case were as follow.

A legislative committee was investigating gambling violations in Texas and subpoenaed the defendant to testify at a time when an indictment alleging gambling violations had been filed against him in Dallas County. Pursuant to the authority of Art. 5429a, supra, the committee had guaranteed the defendant *transactional* immunity covering any gambling information he may relate. Despite the grant of immunity, the defendant refused to testify. As directed by the statute, his refusal to testify was certified to the District Attorney, and the defendant was convicted in a Travis County District court. On appeal, the defendant contended that once the Dallas district court acquired jurisdiction over him through the indictment, any effort on the part of the Legislature to grant him immunity would constitute a violation of the separation of powers set forth in the Texas Constitution.

This Court conceded that the defendant's proposition appealed to the "natural desire of a judge to guard the prerogatives of his branch of government," but added "we can assert no greater power than the Constitution grants us." *Ferrantello*, supra, 256 S.W. at 591. The Court overruled the defendant's ground of error since Art. 5429a, supra, did not affect the constitutional jurisdiction of the district court, but would merely have provided the defendant a defense at any subsequent trial. The statute was found constitutional and the defendant's conviction was affirmed.

Let me pause to point out that in exactly the same manner, the Speedy Trial Act does nothing more than provide the defendant with a defense to prosecution. The scope of the prohibition against prosecution is exactly the same as the scope of the transactional immunity grant. In fact, in enacting the Speedy Trial Act scheme, the Legislature could not have followed the *Ferrantello* case more closely. In both cases, the judge must, by legislative decree, dismiss the indictment upon finding that the defense exists, and in both cases further prosecution is barred for the case in question and any other arising out of the transaction.

Returning to *Ferrantello*, supra, application of the two-step analysis anticipates the result. In this case, the judicial power involved was the authority to exercise and retain criminal jurisdiction over a defendant. The legislative power involved was the authority to investigate crimi-

nal matters and grant transactional immunity to witnesses, thus precluding prosecution for the matters brought forth. Encroachment was not found: the Legislature was not itself dismissing the prosecution; rather, the court retained jurisdiction over the defendant, who had a defense to further prosecution.

We may postulate that had the portion of Art. 5429a, Sec. 3 regarding transactional immunity allowed the Legislature itself to dismiss the defendant's indictment, an encroachment may very well have been found. This is because while it is most often proper for the legislature to set up the conditions which, if found by the judiciary to have occurred, will mandate a particular judgment with a particular result, separation of powers is offended when the legislature itself seeks to enter that judgment. The same offending action takes place when a legislature seeks to modify, impair, vacate or reverse an existing judgment. 16 C.J.S. *Constitutional Law* § 128, et seq.

The Texas Supreme Court has also had occasion to examine the doctrine of separation of powers. In *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025 (1934), Miller had obtained a judgment against Langever, but when the property was sold, the proceeds of the sale were insufficient to satisfy the entire debt. Under the law at the time the judgment was entered, Miller had a valid and unsatisfied deficiency judgment for the rest of the debt. After the judgment was entered, the Legislature passed a law which effectively canceled all deficiency judgments by depriving the courts of jurisdiction to enforce them. The new law was to apply to all deficiency judgments, including judgments previously rendered. Among other challenges, Miller contended on appeal that the new law violated Art. II of the Texas Constitution.

The Supreme Court examined the doctrine of separation of powers and held that the Legislature was without authority to pass a statute which would render a previously valid court decree unenforceable. The Court stated, "We have not found in the books a plainer violation of this constitutional provision than that shown in the act before us," *id.* 76 S.W. at 1035, then declared the new law unconstitutional.

In *Langever*, supra, the judicial power attendant to rendering and enforcing valid judgments was considered along with the Legislature's power to create laws. The clearest case of legislative encroachment on judicial power was found: the Legislature had exceeded its authority by passing a law which deprived the courts of jurisdiction to enforce prior valid judgments. Although the Legislature was authorized to declare what the law would be henceforth, it had no authority to nullify previous acts of the judiciary. Thus, such a law infringed upon the powers of the judiciary granted by the Texas Constitution.

In *Government Services Ins. Underwriters v. Jones*, 368 S.W.2d 560 (Tex.1963), Senator Franklin Spears sought a legislative continuance in a case pending in district court in Travis County. The trial court overruled the motion for continuance and held that the mandatory nature of Art. 2168a, V.A.C.S., which provided for legislative continuances, rendered the statute unconstitutional under Art. II, § 1, of the Texas Constitution. The defendants went to the Supreme Court seeking an order of mandamus directing the judge to grant the continuance.

The two-step analysis in this case involved the judiciary's power to exercise discretion in disposing of motions before it and the Legislature's power to have its members in attendance to pass laws. The Supreme Court noted that it is often difficult to determine whether a particular function is judicial or legislative in nature, stating:

"In determining whether or not the exercise of a power by one branch of government is an unauthorized invasion of the realm or jurisdiction of another branch, we must consider the relationship of the various governmental departments as set forth and defined in the Texas Constitution, for that which is permitted by the Constitution cannot be unconstitutional. The *power and authority* of a state *legislature* is plenary and its extent is *limited only* by the *express or implied restrictions* thereon *contained in or necessarily arising from the Constitution.*" (emphasis supplied). *Id.* at 563. The Court further noted that this statute did in fact encroach upon the judiciary:

"A mandatory continuance by legislative enactment will undoubtedly interfere somewhat with the operations of the judicial department of government."

*Id.* at 564–5. Based largely on previous cases which held the statute constitutional, however, the Supreme Court held that the mandatory continuance was not, on balance, an undue burden on the judiciary and did not violate the separation of powers provision of the Texas Constitution.

It is important to emphasize here that in *Government Services*, supra, the Legislature required the judiciary to rule a certain way on a motion upon finding certain conditions precedent. Following the majority's reasoning (such as it is) in the case at bar, one would expect this to be held a classic violation of separation of powers. Not all encroachments by one branch of government into the affairs of another, however, amounts to a violation of separation of powers. The truth is that it is and always has been quite normal for the *legislature to mandate a particular ruling once a judge finds* certain conditions are met.

With these cases in mind, the Speedy Trial Act may now be addressed with regard to separation of powers vis-a-vis the judiciary. First, we must determine which powers are involved. The judicial power means the "power of the court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision." *Morrow*, supra.

Next, we determine what power of the legislature is involved. Article V, § 25 of the Texas Constitution gives the Supreme Court the power

To the majority's failure to follow our own Constitution and caselaw and give due deference and consideration to the powers of our other branches of government, and to the setting of such frightful precedent, I

to make rules of procedure not inconsistent with the laws of the State. Thus, although the statute relinquishes full rule-making power to the Court, the ultimate power still lies with the legislature. *Few v. Charter Oak Fire Ins. Co.,* 463 S.W.2d 424 (Tex.1971); *Government Services,* supra at 563. This power extends to criminal courts as well. Thus the legislature is empowered by the Constitution to make laws regarding the procedures to be used in Texas courts. See 12 Tex.Jur.3d, *Constitutional Law* § 65, p. 581. Nor will anyone seriously dispute the power of the legislature to make statutes defining, describing, expressing or effectuating the rights guaranteed citizens by the Constitution (including Art. I, § 10 of the Texas Constitution: "the accused shall have a speedy public trial"). *Johnson,* supra. For instance, Art. 38.-22, V.A.C.C.P., is equal in scope to the provisions against self-incrimination present in the Texas Constitution.

Additionally, what is not stated in the Constitution is sometimes as important as what is stated. There is nothing in the Texas Constitution which prohibits the legislature from passing laws regarding criminal procedures or a defendant's right to a speedy trial. Furthermore, there is nothing in the Constitution which mandates that once the courts have jurisdiction over a defendant, the legislature may not pass any laws which direct the course of the courts' actions in any way. Thus, the Constitution does not indirectly or by implication prohibit passage of procedural or substantive rights statutes. This is important because, as again stated by the Texas Supreme Court:

"The power and authority of a state legislature is plenary and its extent is limited only by the express or implied restrictions thereon contained in or necessarily arising from the Constitution itself."

*Government Services,* supra, at 563.

Once the relevant powers are identified, we may now determine whether the specific exercise of the legislature's power to pass statutes by its enactment of the Speedy Trial Act encroaches upon the power of the judiciary to decide and pronounce judgments and to carry them into effect.

As previously stated, that the statute may be outcome determinative does not necessarily imply an impermissible encroachment. The statute involved in *Ferrantello,* supra, allowing the Legislature itself to grant transactional immunity to a defendant even if he were presently being tried for the transaction, was certainly outcome determinative since the judge would have had to dismiss the case if the defendant raised his grant of transactional immunity; however, no encroachment was found.

Additionally, the legislature has, in passing statutes affecting defendants' rights, dictated judicial rulings through outcome determinative statutes at least as far back as the Code of Criminal Procedure of 1856. Article 602 of that Code provided:

"Whenever it appears in the record in any criminal action, taken to the Supreme Court upon appeal by the defendant, that the instructions given to the jury were verbal, (except when so given by consent in a case of a misdemeanor) or that the District Judge has departed from any of the requirements of the eight preceding Articles, *the judgment shall be reversed,* provided it appears from the record that the defendant excepted to the order or action of the Court at the time of trial." (emphasis supplied)

Such statutes, which forbade the courts from reversing cases for charge error unless an objection was raised in the trial court but required courts to reverse if an objection was so raised, mandated a judicial ruling and were unquestionably outcome determinative. But they were always upheld by the courts against whatever challenge that they "transgress the high powers of the Court of Criminal Appeals." *Johnson v. State,* 42 Tex.Cr.R. 103, 58 S.W. 69 (Tex.Cr.App. 1900). As stated by Judge Henderson in *Johnson,* supra at 70, when commenting on the history of the code provision:

"This was an affirmative statute, and was construed by the courts as mandatory, requiring the reversal if the error was excepted to at the time, whether material or not. It was further held, and very properly, that this was not a limitation on the power of the court; ...."

If the legislative action in *Johnson,* identical as it is to the action the majority complains of today, violated the separation of powers doctrine, the courts surely would have halted the practice long ago.

Moreover, with reference to other previously discussed cases, the Speedy Trial Act does not affect the jurisdiction of the courts as set forth by the Texas Constitution. Cf. *Langever,* supra. The Legislature is not *itself* discharging the defendant, which just might effect a usurpation of the courts' power to determine cases. Cf. *Ex parte Youngblood,* supra. Nor is it unconstitutional because it requires the courts to act in a particular way under certain circumstances. See *Government Services, Ferrantello* and *Johnson,* supra.

The sense of propriety gleaned for the analysis of the Texas cases discussing separation of powers compels the conclusion that the Texas Speedy Trial Act cannot be considered unconstitutional as an impermissible encroachment by the Leglisature upon the powers of the judiciary. The courts have the power to decide cases and pronounce judgments, but this power is subject to the Legislature's power to pass statutes affecting procedures and defendants' rights, and dictating outcomes once judicial decisions are made.

dissent with an overwhelming sense of foreboding.

TEAGUE and DUNCAN JJ., join.