TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00179-CV







John B. Holmes, Jr., Harris County District Attorney, Appellant




v.




Dan Morales, Attorney General of the State of Texas; Randy Schaffer;

Winfred H. Morgan; David Branam; Mark Moore; Bridget Chapman;

Joe Gorton; Harold Lloyd; Lee Willie Maxie; and Shirley Southerland, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 93-07978, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






 John Holmes, district attorney in and for Harris County, sued Dan Morales,
Attorney General of Texas, and others, for declaratory relief regarding certain of his decisions
under the Texas Open Records Act. See Tex. Gov't Code Ann. §§ 552.001-.353 (West 1994 &
Supp. 1995) (the "Act"); see also Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem.
Code Ann. §§ 37.001-.011 (West 1986). Holmes appeals from the resulting declaratory
judgment. We will affirm the judgment.



THE CONTROVERSY


 Holmes maintains, among other records, numerous "files" pertaining to individuals
who have become involved with the criminal-justice system as suspects or ultimately as defendants
in criminal cases. Holmes discontinues some files, for various reasons, without prosecution;
others are prosecuted to a conclusion, including post-conviction review by direct and collateral
attack. The parties refer to these as "closed files" as distinguished from the "active files" Holmes
maintains for on-going investigations or prosecutions. (1)

 Fourteen individuals requested information or records contained in as many of
Holmes's "closed files." See Act § 552.221. Each file pertained to a different person. Holmes
declined to release the information or records and asked the attorney general for a decision on
whether the requested files were subject to compelled disclosure under the Act. See id.
§ 552.301. When the attorney general determined that all or a part of each file was subject to
disclosure under the Act, Holmes sued for a declaratory judgment to the contrary, naming as
defendants the attorney general and the fourteen individuals. (2) He based his action on both the
Uniform Declaratory Judgment Act and the special provision for declaratory relief set out in
section 552.353(b)(3) of the Act. By taking non-suits, Holmes reduced the number of defendants
to ten, including the attorney general.

 Holmes moved for summary judgment on the five grounds discussed below. The
attorney general also moved for summary judgment on grounds that generally averred the opposite
of Holmes's five grounds. The trial court overruled Holmes's motion in its entirety and sustained
the attorney general's motion to the following extent only, denying all other relief: (1) the office
of district attorney of Harris County is a "governmental body" subject to the Act; (2) applying the
Act to the office of district attorney does not violate the separation-of-powers principle of the
Texas Constitution; and (3) Holmes must, in accordance with the attorney general's rulings,
release the information requested by the nine individuals remaining in the lawsuit. On appeal,
Holmes complains the trial court erred in overruling each of the five grounds upon which he
requested summary judgment.



DISCUSSION AND HOLDINGS


Whether the Office of the District Attorney is a "Governmental Body" Subject to the Act.

 Information is "public information" subject to compelled disclosure under the Act,
unless otherwise excepted, when the information is "collected, assembled, or maintained" by or
for a "governmental body." Act § 552.021(a). In his first point of error, Holmes contends the
trial court erred because the office of district attorney is not a "governmental body" within the
meaning of the Act. The Act defines "governmental body" to include an "office that is within .
. . the executive . . . branch of government and that is directed by one or more elected . . .
members." Act § 552.003(a)(1). We believe the office of district attorney falls squarely within
this statutory definition as an elective office within the executive branch of government, directed
by a single elected "member."

 The district attorney's principal duty is to "represent the State in all criminal cases
in the district courts of his district and in appeals therefrom." Tex. Code Crim. Proc. Ann. art.
2.01 (1981). (3) The government's "investigation and prosecution of crimes is a quintessentially
executive function." Morrison v. Olson, 487 U.S. 654, 706 (1988) (Scalia, J., dissenting)
(emphasis added); see also Heckler v. Chaney, 470 U.S. 821, 832 (1985). Insofar as the district
attorney's primary duty and function are concerned, the office fits easily and naturally within the
definition of "governmental body" set out in section 552.003(a)(1) of the Act.

 Holmes argues, however, that the office of district attorney is expressly excluded
from the definition of "governmental body" by section 552.003(b) of the Act, which provides as
follows: "In this chapter, `governmental body' does not include the judiciary." The office of
district attorney is an element of the state judiciary, according to Holmes, because the office is
"created" in section 21 of Article V of the Texas constitution--an article establishing the "Judicial
Department" of state government. Tex. Const. art. V, § 21 (1876, amended 1954). See Meshell
v. State, 739 S.W.2d 246, 253 (Tex. Crim. App. 1987). We reject this theory.

 We will discuss further, in connection with another point of error, the constitutional
aspect of the office of district attorney. Suffice it now to say that we disagree with Holmes's
silent premise that the word "judiciary," as used in section 552.003(b) of the Act, and the term
"Judicial Department," at the head of Article V of the Texas Constitution, mean the same thing. 
They plainly do not.

 The word "judiciary" carries the same meaning in both ordinary and legal usage: 
the branch of government in which the judicial power is vested--a system, therefore, of courts of
law. See Webster's Third New International Dictionary 1223 (Philip B. Gove ed., 1986); Black's
Law Dictionary 849 (6th ed. 1990). We find nothing that suggests the legislature intended the
word "judiciary" to have any special meaning apart from its meaning in ordinary and legal usage. 
More to the point, the office of district attorney cannot be included in the meaning of "judiciary"
because the state constitution invests no judicial power in that office even while placing the office
in the "Judicial Department" of state government. (4) Instead, section 1 of Article V vests the state's
entire judicial power in the courts named in that section, all of which are courts of law save the
commissioners court. We cannot conclude, therefore, that the legislature intended to include the
office of district attorney in the word "judiciary" when that body composed section 552.003(b)
of the Act. We overrule Holmes's first point of error.



Whether the Act Violates the Separation-of-Powers Principle.

 As a necessary predicate for the general system of checks and balances diffused
throughout the state constitution, Article II, section 1 divides the powers of state government "into
three distinct departments" and confines each "to a separate body of magistery, to wit: Those
which are Legislative to one, those which are Executive to another, and those which are Judicial
to another." Tex. Const. art. II, § 1. The section then directs that "no person, or collection of
persons, being of one of these departments shall exercise any power properly attached to either
of the others, except in the instances herein expressly permitted." Id.

 This statement of the separation-of-powers principle, in Article II, section 2,
appears on its face to be rigid and absolute. The principle would collapse on itself, however, if
given that construction because the legislature's power would ultimately consume the other two
departments, given its power of the purse. The Federalist No. 48, at 323 (James Madison)
(Robert B. Luce, Inc. ed., 1976). And such a construction would be impossible to implement in
all cases because not every governmental power fits logically and clearly into any particular
"department." Government Servs. Ins. Underwriters v. Jones, 368 S.W.2d 560, 562 (Tex. 1963). 
Consequently, it has long been understood that the separation-of-powers principle means this: a
public officer or body may not exercise or otherwise interfere with a power constitutionally
assigned to another public officer or body, nor may either surrender its own constitutionally
assigned power, referring in all cases to the "mass" of its powers or any "core" or paramount
power. Id. at 564-65 n.3. Some permissible degree of conflict and adjustment is subsumed in
the separation-of-powers principle. "Co-ordination or co-operation of two or more branches or
departments of government in solution of certain problems is both the usual and expected thing
. . . . The system of checks and balances running throughout the governmental structure [,] while
designed to prevent excesses, is not intended to make effective action impossible." State Bd. of
Ins. v. Betts, 308 S.W.2d 846, 852 (Tex. 1958). "The separation principle is not and cannot be
rigid." 1 George D. Braden et al., The Constitution of the State of Texas: An Annotated and
Comparative Analysis 98 (1977); see generally Harold H. Bruff, Separation of Powers Under the
Texas Constitution, 68 Tex. L. Rev. 1337, 1348-56 (1990).

 Holmes contends in his fifth point of error that the compelled-disclosure provisions
of the Act cannot apply to a district attorney's investigation and prosecution files without violating
the separation-of-powers principle, and the statute is consequently void if construed to have that
effect. He argues that his "files" contain his work product as an attorney and papers that reflect
strategies, tactics, and other decisions he has taken in his prosecutorial discretion, all of which
amount to "core" functions of the district attorney's office as he represents the state in criminal
cases in district court and on appeal. We assume this is the case. Concerning the separation-of-powers principle, however, a constitutional problem arises only when one office or governmental
body interferes with another "in a field constitutionally committed to [the latter's] control." Betts,
308 S.W.2d at 851-52 (emphasis added). May it be said that the Act purports to authorize the
attorney general's interference with the office of district attorney in a field that the constitution
has committed to the latter's control? It is not an easy question to answer.

 It is quite evident that the office of district attorney has by statutory delegation the
duty and power to represent the state in criminal cases in district court. Tex. Code Crim. Proc.
Ann. art. 2.01 (West 1977). We must find that delegation in the constitution, however, before
a separation-of-powers problem arises. Article V, section 21 of the constitution provides as
follows:



The County Attorneys shall represent the State in all cases in the District and
inferior courts in their respective counties; but if any county shall be included in
a district in which there shall be a District Attorney, the respective duties of
District Attorneys and County Attorneys shall in such counties be regulated by the
Legislature.



Tex. Const. art. V, § 21 (emphasis added). On its face, this provision explicitly invests county
attorneys with the power and duty to represent the state in all district-court cases, assumes the
existence of district attorneys without assigning them any power or duty, and leaves to the
legislature's regulation the respective duties and powers of county and district attorneys in those
instances where a county is included in a district attorney's district. "This section has caused the
courts a lot of trouble." Braden, supra, at 464. A definite construction has been placed on
section 21, however, and we believe it controls the matter so far as the present controversy is
concerned. In Garcia v. Laughlin, 285 S.W.2d 191, 195 (Tex. 1956), the supreme court declared
as follows:



[W]e believe the Constitution provides for either the district attorney or the county
attorney, jointly or singly, in the event either fails to act, to be the proper officer
to represent the State in the district court.



Id. (emphasis added). We understand this to mean that the office of district attorney derives
directly from Article V, section 21 its power to represent the state, a constitutional power that the
legislature may divide between the county and district attorneys in cases of overlap. It is not,
then, a mere statutory power. Thus, Holmes may legitimately argue that the Act violates the
separation-of-powers principle by purporting to authorize the attorney general to usurp Holmes's
constitutionally given discretion to decide when, where, and what part of his "files" to make
public as he carries out his duty to represent the state.

 In Article IV, section 22, the constitution directs the attorney general to perform
certain specified duties together with "such other duties as may be required by law." Tex. Const.
Ann. art. IV, § 2. One duty "required by law" is that of administering sections 552.301-.307 of
the Act. These sections require the attorney general to make a decision on application by
governmental bodies when they believe requested information may not be public information. It
appears implicit in those sections that the attorney general is expected to consider, in reaching a
decision, the various exemptions and exclusions set out in the Act. A governmental body may
decline to comply with the attorney general's decision and obtain judicial review of its correctness
in a district court of Travis County by filing within a specified time "a petition for a declaratory
judgment, a writ of mandamus, or both, against the attorney general . . . seeking relief from the
decision." Act § 552.353(b)(3). (5)

 We do not believe the legislature's delegation of power to the attorney general, in
the Act, has empowered that officer to frustrate the district attorney's constitutional power and
duty to represent the State in criminal cases. Before the Act, a "citizen" possessed a common-law
right to inspect public records. While the right was never absolute and inspection has always been
subject to reasonable regulation and the custodian's discretion, the lawfulness of the custodian's
decision to deny inspection was always subject to judicial review on application for writ of
mandamus. See generally Nixon v. Warner Communication, Inc., 435 U.S. 589, 597-99 (1978);
Hutchins v. Texas Rehabilitation Comm'n, 544 S.W.2d 802, 804 (Tex. Civ. App.--Austin 1976,
no writ); 76 C.J.S. Records §§ 62, 63 (1994); J.T.B., Jr., Annotation, Enforceability by
Mandamus of Right to Inspect Public Records, 60 A.L.R. 1356 (1929). The right of inspection
is now by virtue of the Act a statutory right, subject of course to the conditions, exclusions, and
exceptions specified in the Act. Before the Act, the district attorney might in his discretion deny
the inspection of any record in his custody. He may still do so after the Act. He might in his
discretion now disregard the attorney general's advisory opinion that the requested information
or record is lawfully subject to inspection. See City of San Antonio v. Texas Attorney Gen., 851
S.W.2d 946, 950 (Tex. App.--Austin 1993, writ denied). And finally, he may have the issue
judicially determined in a mandamus or declaratory judgment action in a Travis County district
court.

 Nothing of substance has changed with the Act. The district attorney still makes
the initial determination of whether the law allows access to any records or information and the
courts still make the final determination. The only new aspects are insubstantial--the district
attorney's required preliminary resort to an advisory opinion of the attorney general, certain
procedural consequences of that action, and an exclusive venue in Travis County. We cannot see
how the Act has deprived the district attorney of any substantive discretion he possessed before
the Act. We hold accordingly and overrule Holmes's fifth point of error.



Whether Any Requested Information Is Excepted From Disclosure.

 In points of error two, three, and four, Holmes contends his "closed files" are
excepted from compelled disclosure under the provisions of sections 552.103, 552.108, and
552.001 of the Act. These sections exempt from compelled disclosure certain information relating
to litigation, certain law-enforcement records and records held by prosecutors, and information
expressly made confidential by law.

 The trial-court judgment ordered disclosure of the nine contested files on terms
previously designated by the attorney general in his advisory rulings. In his brief, Holmes does
not complain of these terms. Rather, he contends his "closed files" are categorically exempt from
compelled disclosure under the sections named above. It appears undisputed, however, that any
particular file may contain records or information that are excepted from compelled disclosure
along with other records or information that are not. In other words, the records and information
are likely to be mixed in that regard and the confidentiality of any record or information within
a file depends on the facts pertaining to each file. By their terms, moreover, the applicability of
each of the three named sections of the Act requires a factual determination in each instance. The
trial court was therefore correct in denying declaratory relief as to the applicability of sections
552.103, 552.108, and 552.001 beyond the nine files in question, as to which the facts were
undisputed and no controversy is raised on appeal.

 In the absence of an appellate controversy about the nine particular files, we
overrule Holmes's second, third, and fourth points of error.

 Finding no reversible error, we affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: August 16, 1995 

Publish

1.   The Act makes no distinction between active and inactive files and Holmes's
appellate contentions seem to apply alike to both.
2.   The individuals are Randy Schaffer, Kim Weiner, Winfred H. Morgan, David
Branam, Donovan J. Carey, Mark Moore, Don M. Barnett, Betty Ghio, Bridget
Chapman, Joe Gorton, Harold Lloyd, Joel Chavez, Lee Willie Maxie, and Shirley
Southerland. Weiner, Carey, Ghio, Gorton, Chavez, and Maxie did not appear and
Holmes filed a non-suit, before trial, as to them and as to Barnett who had appeared.


 The attorney general had ruled that the contents of the requested files were subject
to disclosure with the exception of criminal-history information contained therein
(Schaffer, Morgan, Chapman, Gorton, Lloyd); that the entire file was subject to
disclosure (Branam, Moore); that the only document requested, an offense report, was
subject to disclosure (Maxie); or that the documents Holmes furnished the attorney
general were subject to disclosure save for three specified documents (Southerland).
3.   Certain more specific duties are assigned all prosecuting attorneys in Chapter 41 of
the Government Code. See Tex. Gov't Code Ann. §§ 41.005-.009 (West 1988); see also
Meshell v. State, 739 S.W.2d 246, 253 n.9 (Tex. Crim. App. 1987) (acknowledging that
district and county attorneys perform some executive duties even though constituted as part of
the "Judicial Department").
4.   The "judicial power" is the power to award legal remedies that are traditional in courts
of justice, in controversies between disputing parties who are properly before the court, based
ordinarily upon past or present facts and according to rights, duties, and liabilities laid down
in pre-existing rules of constitutional, statutory, or common law. The office of district
attorney has no such power. The Judicial Department established in Article V includes other
offices in aid of the judicial power--sheriff and constable, for example--in addition to district and
county attorneys.
5.   See A&T Consultants, Inc. v. Sharp, 38 Tex. Sup. Ct. J. 1072 n.1 (July 21, 1995)
(legislature recently amended Act so that "a governmental body may bring suit against the
attorney general in order to resist the disclosure of information that the attorney general has
opined to be public information").